In re ERNESTO MELÉNDEZ PÉREZ, querellado.

*Número:* O-76-91    *Resuelto:* 22 de abril de 1976

*Héctor R. Orlandi Gómez, Subprocurador General, Adolfo J. Vila y Ronaldo Rodríguez Ossorio, Procuradores Generales Auxiliares,* abogados de la Procuradora General de Puerto Rico, *Luis R. Polo* y *Francisco Ponsa Feliu,* abogados del queréllado.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

El Procurador General de Puerto Rico ha presentado querella contra el abogado notario Ernesto Meléndez Pérez imputándole violación de los Cánones 35, 38 y 33 del Código de Ética Profesional[1] en tres cargos por (a) autorizar escrituras intituladas de primera hipoteca, rango que no tenían, por existir gravámenes preferentes y anteriores que afectaban el inmueble hipotecado; (b) no informar a los otorgantes la subsistencia de dichos gravámenes previos, aun después de otorgadas las escrituras; y (c) permitir que corporaciones o entidades clientes del bufete para el cual trabajaba, cobraran en todo o en parte por los servicios notariales del querellado.

[1] Partes pertinentes de los Cánones citados:
"Canon 35.

. . . . . . . .

"El abogado debe ajustarse a la sinceridad de los hechos . . . al redactar afidávits u otros documentos."
"Canon 38.

"El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia."
"Canon 33.

"Tanto en su propia oficina como fuera de ésta el abogado tiene la obligación de evitar la práctica ilegal de la abogacía o la notaría por personas no autorizadas para ello. Será impropio de un abogado el permitir o facilitar a una persona o entidad que no esté autorizada a ejercer 'la abogacía o el notariado que cobre total o parcialmente por los servicios profesionales o notariales prestados por el abogado."

Hemos examinado el informe de investigación del Procurador, la querella y la contestación suplementada por declaración jurada del querellado que en esencia admite y aclara los hechos que conciernen a su conducta profesional. Del expediente en su integridad surge con claridad indubitada que el querellado Lic. Meléndez Pérez era abogado-notario socio del bufete Blanco Lugo, Morán y Lavastida a cargo de consultoría y documentación del Banco de Economías, del Banco Crédito y Ahorro Ponceño, y del Fondo de Retiro de la Universidad de Puerto Rico; que nada conocía de los asuntos de First Conventional Investment Corp., cliente del bufete; que el 5 de abril de 1973, día en que el abogado que tenía a su cargo la autorización de ocho escrituras relacionadas con dicha corporación no pudo trasladarse a Coamo, a su ruego y en su lugar lo hizo el querellado y tomó las firmas en la forma impresa de pagaré y escritura de hipoteca, sólo después de haberse otorgado las correspondientes escrituras de segregación, liberación (²) y compraventa ante otro notario del mismo bufete relacionado con la vendedora Coamo Gardens Development Corporation. El querellado dependió de la corrección de lo expresado en los documentos pre-redactados y en la confianza que le merecían tanto el Lic. Caparrós, compañero de bufete, a quien sustituyó, como el Lic. Castro, notario a cargo de la documentación de Coamo Gardens, por estimar que conocían los particulares de finanzas de First Conventional relevantes a los documentos de hipoteca cuya autorización se le encomendó.

En las escrituras de hipoteca autorizadas por el querellado los compradores de casas garantizaban el balance del precio a favor de First Conventional por lo que era a ésta a quien interesaba que la hipoteca tuviera rango de "primera" como se titulaba el documento. El querellado no intervino en las escri-

---

(²) Posteriormente resultó que las casas vendidas quedaron afectas a hipoteca por $4,416,720 porque First Conventional no las había liberado.

turas de segregación, liberación y compraventa en las que cada comprador quedaba afectado por un gravamen hipotecario que no debían ellos asumir, y del que las viviendas se suponían liberadas. Queda en pie el hecho de que el título de "Primera Hipoteca" de algún modo ratificaba en el comprador la convicción de que su casa no tendría más carga por haberse liberado cualquiera anterior. Esta es conclusión a la que puede arribarse con facilidad conocido el desarrollo de los hechos, pero que exigía investigación acuciosa del estado de título de First Conventional al menos con los propios compañeros de bufete que tenían a su cargo este cliente. El querellado, en la relativa festinación e improvisación de su viaje a Coamo optó por descansar en la corrección de los documentos que se le entregaron.

Siendo de tal modo efímera y casual la intervención del querellado al autorizar dichas hipotecas no tenía conocimiento que desvirtuara su presunción de corrección en estos procedimientos y que le permitiera informar a los compradores de casas la subsistencia del gravamen anterior. Por igual fundamento de su ingerencia accidental, como substituto del miembro de la firma que manejaba la documentación de First Conventional, no intervino en la facturación por servicios profesionales a dicha corporación ni permitió que ésta retuviera para sí parte de sus honorarios notariales.

Cuando en 1906 la Asamblea Legislativa derogó la Ley del Notariado declarando que "solo podrán en lo sucesivo ejercer dicha profesión [notarial], los abogados que hayan sido admitidos a practicar como tales ante las Cortes de Justicia por la Corte Suprema" (Ley de 8 de marzo de 1906, Leyes de ese año, pág. 141), se propuso fortalecer los recursos intelectuales del notariado y enriquecer su función social, poniendo a disposición de la sociedad un notario que es además un técnico conocedor del Derecho. Por tradición, y en nuestra patria además por expresión legislativa, el notario no es simple observador del negocio jurídico que ante él se realiza limitando su actuación a cerciorarse de la identidad de partes

y autenticidad de las firmas. Su función, que no es privada, sino pública, trasciende la de un autómata legalizador de firmas y penetra al campo de legalidad de la transacción que ante él se concreta. ¿Cómo guardar silencio ante una situación lesiva para cualquiera de los otorgantes, si su entrenamiento legal le hace testigo de la irregularidad? ¿Para qué otra cosa sirve su profesión de abogado por ley puesta a disposición de las partes en su despacho notarial? En su deber de ilustrar, y dar consejo legal a las partes contratantes, no hay guardarraya que separe al notario del abogado. El notario que impasible ve consumarse en su presencia un pacto cuyas consecuencias legales ignora alguna de las partes o que pudiendo hacerlo, por ser abogado, rehúsa explicar a los menos informados del significado y proyecciones de cláusulas para ellos poco menos que ininteligibles; el notario que limita su intervención rutinaria a leer o dar a leer el documento a los otorgantes y asegurarse de la identidad de sus personas y firmas, en un ritual aséptico pero vacío de la inteligencia y comprensión de los firmantes, está con su desidia derrotando los fines y propósitos que le hicieron depositario de inapreciable confianza pública. En la práctica notarial con rareza se dan las circunstancias de urgencia([3]) e imprevisión que a veces frustran la abogacía por lo que son contadas las ocasiones en que un notario pueda acogerse al palio de olvido, inadvertencia o negligencia excusable. El consejo del abogado notario debe guiar la redacción del documento público y dar luz en el acto final de otorgamiento.

La función del notario trasciende el acto externo de legalización de unas firmas. Presupone la creación de un nivel de entendimiento y comunicación entre el fedante y los otorgantes que le permite a éstos formar una racional conciencia

---

([3]) Citando a González Palomino, este Tribunal ha dicho que el notario-jurista *aplica* el derecho exactamente igual que el Juez, con la única diferencia de que éste lo hace en el pleito, y aquél en la normalidad. *Ponce Real Estate Corp.* v. *Registrador*, 87 D.P.R. 215, 225 (1963).

del acto en que concurren. La fe pública notarial tiene como base la voluntad ilustrada de los contratantes; no puede ser fruto de la ignorancia y la obscuridad. El notario, principal instrumento de la fe pública, tiene la indeclinable obligación de propiciar y cerciorarse de ese estado de conciencia informada supliendo las explicaciones, aclaraciones y advertencias en todo caso en que hagan falta para lograr el consentimiento enterado de los otorgantes al acto notarial. Ha de dar fe y autenticidad "conforme a las leyes"; imperativo declarado en la Sec. 1ª de la Ley Notarial de 1906 (4) y ratificado en la actual de 1956. (4 L.P.R.A. secs. 1001 *et seq.*) La sociedad debe tener en todo notario una garantía de certeza y de limpieza en los actos y contratos cuya autenticación le encomienda, condiciones que sólo pueden lograrse a la luz del entendimiento. Cuando por Ley de 8 de marzo de 1906 se instauró la práctica del notariado exclusivamente por abogados admitidos al ejercicio de la profesión se elevó la calidad de la fe pública en Puerto Rico, y simultáneamente se exigió de los notarios una mayor aportación técnica, una mejor ilustración y consejo que realzara la percepción por los contratantes de los particulares y consecuencias de su aceptación del documento sometido para su firma. El notario que falla a la sociedad y a los que ante él comparecen en este fundamental aspecto de aclaración e ilustración será el coautor de un consentimiento enfermo e ineficaz en derecho y habrá traicionado

---

(4) Se dispuso en aquella temprana expresión legislativa que "el Notario es el único funcionario autorizado para dar autenticidad, *conforme a las leyes*, a los contratos y demás actos extrajudiciales que ante su presencia se realicen." Sec. 1, Ley citada. Este texto ha sido literalmente incorporado a la Sec. 1ª de la vigente Ley Notarial que es la Núm. 99 de 27 de junio de 1956 (4 L.P.R.A. sec. 1001), añadiendo que el notario dará fe, además de autenticidad.

"Los Escribanos públicos pongan en las Cartas que ficieren, el año, y día, e la hora en que las ficieren, e su señal: e faganlas derechas en todas las otras cosas, así como mandan las leyes: e si de otra guisa las ficieren, no valan." Fuero Real, Ley 3a, Fernández Casado, Notaría, Tomo 2°, Ed. 1895, pág. 14.

la fé de la que es principal guardador. El cumplimiento de los deberes del notario no tendrá dispensa por estar sumergida su actuación en el régimen o sistema de ejercicio del notariado por un bufete pluralizado. La responsabilidad del notario es personal e indivisible.

Si bien la actuación del notario querellado no satisface las normas de excelencia expuestas en esta opinión, su falta está atemperada por factores limitativos de su autonomía en su condición de notario accidental por delegación que no intervino en la redacción de los documentos ni conocía la inventiva financiera de First Conventional Investment Corporation y en parte por no haber él tenido el beneficio del abarcador pronunciamiento judicial sobre la práctica del notariado que hoy hacemos. No hay contra el querellado imputación de colusión o proceder corrupto. Se cumple y satisface el rigor disciplinario cuyo ejercicio la ley reserva a este Tribunal calificando como descuidada la conducta del querellado. Para un abogado de buena reputación como el querellado envuelto con limitado poder de decisión en este infortunado caso, los principios éticos que gobiernan su vida insuflan una intensidad aleccionadora a esta amonestación que hace innecesaria otra sanción. El hombre de bien siempre encontrará fuerza y voluntad para superar sus errores. *Exonerado.*

El Juez Presidente Señor Trías Monge y los Jueces Asociados Señores Rigau y Dávila se inhibieron. El Juez Asociado Señor Dávila, aun cuando inhibido, concurre plenamente en la exposición doctrinaria de la opinión.