*In re* LIC. JOSUÉ FLORES TORRES.

*Número:* O-85-178     *Resuelto:* 17 de noviembre de 1987

---

*Rafael Ortiz Carrión, Procurador General, Rosa Negrón de Quiñones, Procuradora General Auxiliar,* abogados del querellante; *Martín González Vázquez,* abogado del querellado.

PER CURIAM: El presente caso tiene su génesis en una queja que contra el abogado notario Josué Flores Torres sometieran el Sr. Rubén Morales y su esposa la Sra. Gertrudis Bermúdez ante la Comisión de Ética del Ilustre Colegio de Abogados de Puerto Rico. Adoptando la recomendación que sobre el asunto le hiciera la referida Comisión, el Colegio rindió un informe ante este Tribunal en el cual recomendó se tomara acción disciplinaria contra el licenciado Flores Torres. Evaluado dicho informe, le ordenamos al Procurador General de Puerto Rico la formulación de querella contra el mencionado letrado.

La querella radicada por el Procurador, en lo pertinente, expresa:

### CARGO

El abogado-notario Josué Flores Torres incurrió en actos que perjudicaron los intereses de sus clientes el señor Rubén Morales y su esposa la señora Gertrudis Bermúdez y que contraviene[n] las disposiciones que rigen la fé [*sic*] notarial.

En específico el notario no advirtió a sus clientes de su derecho a que se hiciera un estudio registral para conocer los gravámenes a que podría estar sujeta la propiedad que garantizaría su inversión de $10,000.00. No hizo constar en la escritura número 8 de Constitución de Hipoteca en Garantía de Pagaré al Portador otorgada por la señora Hilda M. Rodríguez Carrasquillo el 30 de abril de 1979 la existencia de un gravamen hipotecario sobre la referida propiedad. El gravamen había sido constituído [sic] por Doña Hilda Rodríguez Carrasquillo el día 14 de mayo de 1977 mediante la escritura número 21 ante el abogado notario Félix A. Toro, Jr., e inscrito el 31 de agosto de 1977 y estaba vigente al 30 de abril de 1979 cuando el notario Josué Flores Torres autorizó la escritura número 8 antes mencionada.

El notario no cumplió con el compromiso de inscribir la escritura de hipoteca que ante él se había otorgado ni explicó al peticionario la importancia de la inscripción registral a los fines de que quedara constitu[i]do el gravamen hipotecario para recobrar su inversión.

Tampoco desplegó el notario el cuidado y diligencia que se exige al guardador de la fé [sic] pública notarial al incluir datos registrales erróneos con relación a la propiedad objeto del negocio jurídico que ante él se efectuó. Una certificación registral solicitada al querellante por la Comisión de [É]tica del Colegio de Abogados demostró que en lugar de estar la propiedad inscrita al tomo 198 vuelto del tomo 482 de Ponce como aparece en la escritura número 8, la finca 11,792 objeto de la hipoteca está inscrita al folio 192 vuelto del tomo 1462 Sección I—Ponce.

El querellante se ha visto impedido de recobrar la inversión a que le indujo el propio notario quien le aconsejó efectuar la misma ya que era una inversión garantizada con una propiedad inmueble y luego no tomó las medidas necesarias que él como conocedor del derecho, tenía que tomar para hacer efectiva la garantía hipotecaria.

La actuación del notario Josué Flores Torres viola la Sección 16 de la Ley Notarial (4 L.P.R.A. sec. 1016), y el Canon 35 del Código de [É]tica Profesional.

En San Juan, Puerto Rico, a 26 de marzo de 1985. MC-84-67, págs. 1–3.

Contestada la querella por el licenciado Flores Torres —la cual consistió de una negativa general— designamos al Lcdo. Manuel Moreda como comisionado especial con la encomienda de que recibiera toda la prueba que las partes consideraran necesario presentar y nos rindiera un informe con las determinaciones de hecho que entendiera procedentes. Así lo ha hecho.

## I

Hemos examinado la transcripción de la prueba que fue presentada durante la vista celebrada ante el comisionado especial. Las determinaciones de hecho que éste hiciera encuentran amplio apoyo en la prueba presentada. Por otro lado, ambas partes han manifestado su conformidad con dichas determinaciones. Las mismas demuestran que el licenciado Flores Torres, quien es amigo personal de muchos años del Sr. Rubén Morales, fue el notario que intervino en un préstamo hipotecario —mediante la autorización de una escritura de hipoteca en garantía de un pagaré por la suma de $10,000— que le hiciera el señor Morales a una señora de nombre Hilda M. Rodríguez Carrasquillo. Dicha señora le informó tanto al señor Morales como al licenciado Flores Torres que su propiedad únicamente estaba afecta a una primera hipoteca. Meramente a base de lo informado por la señora Rodríguez Carrasquillo, el licenciado Flores Torres procedió a preparar y otorgar la escritura de hipoteca en garantía del pagaré antes mencionado.

Determinó, como cuestión de hecho, el comisionado Moreda que:

9. El Notario, no le recomendó a su cliente, la necesidad y/o conveniencia de que se practicase un estudio de título de la propiedad, sobre la cual se iba a constituir la hipoteca en garantía del préstamo. Como cuestión de hecho, a la fecha en que se otorgó la Escritura Núm. 29, de 30 de abril de

1979, sobre Constitución de Hipoteca en Garantía de Pagaré al Portador, ante el querellado, la propiedad de Doña Hilda M. Rodríguez Carrasquillo estaba gravada con dos hipotecas.

.    .    .    .    .    .    .    .

10. El Notario querellado, acepta que no aconsejó a su cliente sobre la conveniencia de que se practicase un estudio de título, porque confió en la buena fe de la Sra. Rodríguez Carrasquillo y porque a esa fecha, este Honorable Tribunal no había señalado que era obligación del Notario notificar al cliente de la necesidad del referido estudio de título y así hacerlo constar en la escritura.

.    .    .    .    .    .    .    .

14. Aunque el querellado, Lcdo. Josué Flores Torres, a la fecha de su otorgamiento, entregó al querellante, Sr. Morales, copia certificada de la Escritura de Hipoteca, Exhibit 1, y el original del pagaré, Exhibit 2, no le explicó a éste con suficiente claridad de la necesidad de presentar inmediatamente, la Escritura de Hipoteca en el Registro de la Propiedad, para que ésta obtuviese rango registral. Tampoco le explicó las consecuencias que podía acarrearle el dejar de hacerlo y nada le dijo sobre el monto de los derechos registrales y la necesidad de comprarlos y presentarlos conjuntamente con la escritura al Registro, para que la misma fuese recibida por el Registrador. Todo ello, a pesar de que en la práctica, el deudor hipotecario siempre paga los costos de la inscripción en el Registro.

15. Por falta del debido asesoramiento, el Sr. Rubén Morales, nunca presentó la copia certificada de la Escritura de Hipoteca al Registro de la Propiedad para su inscripción. Informe del comisionado especial, págs. 3–4, 5.

Como hecho adicional, procede que se señale que al señor Morales intentar cobrar su acreencia se encontró con la situación de que la propiedad en controversia había sido vendida por la señora Rodríguez Carrasquillo, no teniendo ésta bienes que pudieran ser embargados por el señor Morales en ejecución de la sentencia que posteriormente obtuvo en un pleito de cobro de dinero que contra ella instará. Por último, debe señalarse que luego que el

comisionado especial Moreda rindiera su informe —el 30 de diciembre de 1986— el abogado querellado presentó una declaración jurada del señor Morales en que éste expresa haber cobrado su deuda y no tener interés adicional en este asunto.

## II

El querellado sostuvo ante el comisionado especial Moreda que a la fecha en que él autorizó la escritura de hipoteca en controversia —esto es, el 30 de abril de 1979— no se había resuelto el caso de *In re Lavastida et al.*, 109 D.P.R. 45 (1979) y que, por lo tanto, los notarios en Puerto Rico no tenían conocimiento de su obligación de advertir a los otorgantes de una escritura pública sobre la conveniencia de realizar, antes del otorgamiento, un estudio registral del inmueble objeto del negocio jurídico.

Si bien es cierto que efectivamente es en el citado caso de *In re Lavastida et al.*, ante, que por primera vez *expresamente* se habla de la obligación del notario de informar a los otorgantes sobre el estudio registral o de título —véase opinión particular emitida por el Hon. Carlos Irizarry Yunqué, ex Juez de este Tribunal—[1] ello no constituye fundamento que exonere al querellado para así no haber actuado. En *In re Meléndez Pérez*, 104 D.P.R. 770, 774-777 (1976) ya habíamos expresado que:

Cuando en 1906 la Asamblea Legislativa derogó la Ley del Notariado declarando que "solo podrán en lo sucesivo ejercer dicha profesión [notarial], los abogados que hayan sido admitidos a practicar como tales ante las Cortes de Justicia por la Corte Suprema" (Ley de 8 de marzo de 1906, Leyes de ese año, pág. 141), *se propuso fortalecer los recursos intelectuales del notariado y enriquecer su función social, poniendo a disposición de la sociedad un notario que es*

---

[1] *In re Lavastida et al.*, 109 D.P.R. 45, 80 (1979).

*además un técnico conocedor del Derecho.* Por tradición, y en nuestra patria además por expresión legislativa, el notario no es simple observador del negocio jurídico que ante él se realiza limitando su actuación a cerciorarse de la identidad de partes, y autenticidad de las firmas. Su función, que no es privada, sino pública, trasciende la de un autómata legalizador de firmas y penetra al campo de legalidad de la transacción que ante él se concreta. ¿Cómo guardar silencio ante una situación lesiva para cualquiera de los otorgantes, si su entrenamiento legal le hace testigo de la irregularidad? ¿Para qué otra cosa sirve su profesión de abogado por ley puesta a disposición de las partes en su despacho notarial? *En su deber de ilustrar, y dar consejo legal a las partes contratantes, no hay guardarraya que separe al notario del abogado.* El notario que impasible ve consumarse en su presencia un pacto cuyas consecuencias legales ignora alguna de las partes o que pudiendo hacerlo, por ser abogado, rehúsa explicar a los menos informados del significado y proyecciones de cláusulas para ellos poco menos que ininteligibles; *el notario que limita su intervención rutinaria a leer o dar a leer el documento a los otorgantes y asegurarse de la identidad de sus personas y firmas,* en un ritual aséptico pero vacío de la inteligencia y comprensión de los firmantes, *está con su desidia derrotando los fines y propósitos que le hicieron depositario de inapreciable confianza pública.* En la práctica notarial con rareza se dan las circunstancias de urgencia e imprevisión que a veces frustran la abogacía por lo que son contadas las ocasiones en que un notario pueda acogerse al palio de olvido, inadvertencia o negligencia excusable. El consejo del abogado notario debe guiar la redacción del documento público y dar luz en el acto final de otorgamiento.

La función del notario trasciende el acto externo de legalización de unas firmas. *Presupone la creación de un nivel de entendimiento y comunicación entre el fedante y los otorgantes que le permite a éstos formar una racional conciencia del acto en que concurren. La fe pública notarial tiene como base la voluntad ilustrada de los contratantes; no puede ser fruto de la ignorancia y la obscuridad.* El notario, principal instrumento de la fe pública, tiene la indeclinable obligación de propiciar y cerciorarse de ese estado de conciencia informada supliendo las explicaciones, aclaracio-

nes y advertencias en todo caso en que hagan falta para lograr el consentimiento enterado de los otorgantes al acto notarial. Ha de dar fe y autenticidad "conforme a las leyes"; imperativo declarado en la Sec. 1a de la Ley Notarial de 1906 y ratificado en la actual de 1956. (4 L.P.R.A. secs. 1001 *et seq.*) La sociedad debe tener en todo notario una garantía de certeza y de limpieza en los actos y contratos cuya autenticación le encomienda, condiciones que sólo pueden lograrse a la luz del entendimiento. *Cuando por Ley de 8 de marzo de 1906 se instauró la práctica del notariado exclusivamente por abogados admitidos al ejercicio de la profesión se elevó la calidad de la fe pública en Puerto Rico, y simultáneamente se exigió de los notarios una mayor aportación técnica, una mejor ilustración y consejo que realzara la percepción por los contratantes de los particulares y consecuencias de su aceptación del documento sometido para su firma.* El notario que falla a la sociedad y a los que ante él comparecen en este fundamental aspecto de aclaración e ilustración será el coautor de un consentimiento enfermo e ineficaz en derecho y habrá traicionado la fe de la que es principal guardador. (Énfasis suplido.)

▇ Realmente no se requiere que uno sea muy perspicaz para realizar que bajo esa norma general, el notario que autoriza una escritura de hipoteca viene obligado, cuando menos, a "advertir cumplidamente a los otorgantes de la necesidad de la investigación registral" y si éstos "advertidos cabalmente, pasan por alto la pesquisa, puede proceder sin más al otorgamiento del instrumento haciendo constar, para mayor garantía que tales advertencias han sido hechas". *In re Lavastida et al.,* ante, pág. 80.

▇ No debe haber duda en la mente de persona alguna que cuando el licenciado Flores Torres omitió informarle al señor Morales sobre la necesidad de realizar un estudio registral y de que debía proceder a presentar inmediatamente la escritura de hipoteca ante el Registro de la

Propiedad y, en especial, de las consecuencias que para él podía tener el así no hacerlo, incumplió con ese deber de ilustración y consejo que es inherente a la práctica del notariado en Puerto Rico. *In re Meléndez Pérez*, ante. Véase, en adición, *Chévere* v. *Cátala*, 115 D.P.R. 432, 438 (1984).

En resumen, la conducta observada por el Lcdo. Josué Flores Torres en la autorización de la escritura de hipoteca en controversia efectivamente constituye una violación de las disposiciones del Canon 35 de Ética Profesional, 4 L.P.R.A. Ap. IX; la misma amerita la suspensión del ejercicio del notariado del referido abogado por un término de seis (6) meses. *Se dictará sentencia de conformidad.*