*In re* MIGUEL A. CHAAR CACHO, querellado.

*Número:* CE-86-372     *Resuelto:* 12 de mayo de 1989

Rafael Ortiz Carrión, *Procurador General*, Norma Cotti Cruz, *Subprocuradora General*, y *Eliadís Orsini Zayas, Procuradora General Auxiliar*, abogados de El Pueblo; *Manuel Martínez Umpierre*, abogado del querellado; *Plinio Pérez Marrero*, Comisionado Especial.

PER CURIAM: En cumplimiento de nuestra Orden de 20 de mayo de 1986, el Procurador General presentó querella contra el querellado de epígrafe y le imputó los cargos siguientes:

### CARGO I

El Lic. Miguel Chaar Cacho violó la Ley Notarial y la Fé Pública Notarial depositada en él, así como los Cánones de Ética, cuando autorizó que ante él se otorgara la Escritura Núm. 51 de 29 de septiembre de 1978, sobre compraventa, compareciendo como otorgante vendedor, don Israel Candelaria Galán y como compradora doña Fructuosa Rodríguez Rosado.

El notario querellado no verificó, ni investigó, ni corroboró, ni tampoco discutió con las partes otorgantes el negocio jurí-

dico allí concretado, pues el texto completo de la escritura objeto de este cargo fue redactado y preparado por el Lic. Pedro Pérez Rodríguez, hijo de doña Fructuosa Rodríguez Rosado, siendo éste último, quien en realidad adquiriría el bien "vendido", aunque se trata de una porción abstracta de una herencia.

## CARGO II

El Lic. Miguel Chaar Cacho violó la Ley Notarial y la Fé Pública Notarial depositada en él, así como los Cánones de Ética Profesional, cuando consintió que en dicha escritura Núm. 51 —redactada en su totalidad por el Lic. Pedro Pérez Rodríguez— uno de los otorgantes, don Israel Candelaria Galán, firmara ante el Lic. Pedro Pérez Rodríguez, quien en realidad configuró todo el negocio jurídico objeto de la escritura 51, pero luego autorizada, por el notario querellado. Querella de 5 de junio de 1986, pág. 2.

El querellado alegó en su contestación que:

## CARGO I

Se niega el cargo I por cuanto: ni la ley notarial (4LPRA1001), ni el código de ética profesional (Título 4, Apéndice IX) exigen en sus disposiciones que el notario actúe de conformidad con lo imputado en el cargo. En tal sentido, véase además In Re: Laboy 113-DPR-476 (1982) en el que se exonera al querellado Florentino Machargo Barreras por una actuación idéntica a la imputada en este cargo.

## CARGO II

El querellado niega por ser total y absolutamente falso el que su escritura número 51 del 29 de septiembre de 1978, no hubiese sido otorgada y firmada en su presencia por el compareciente Israel Candelaria Galán. Se alega específicamente que el señor Israel Candelaria Galán compareció a la oficina del notario querellado y en su presencia firmó la escritura mencionada. Contestación a la querella, 30 de julio de 1986, pág. 1.

El 3 de septiembre de 1986 designamos al Lic. Plinio Pérez Marrero para que actuara de Comisionado Especial.

Una vez concluido el trámite con antelación al juicio, la vista evidenciaria se celebró el 25 de noviembre de 1986. Al iniciar el interrogatorio del querellante original, Sr. Israel Candelaria, la delegada del Procurador General, licenciada Orsini Zayas, procedió a retirar el segundo cargo por entender que todas las circunstancias que rodearon la autorización del documento que firmó, autorizó y consintió el señor Candelaria la convencían de que efectivamente firmó la escritura ante el notario querellado. El querellado no presentó objeción, por lo que se procedió a excusar al testigo.[1]

En cuanto al primer cargo, la abogada del querellante lo sometió por la transcripción del testimonio del querellado en el Caso Núm. Cs-80-2072, *Fructuosa Rodríguez Rosado v. Candelaria Galán y otros*, del Tribunal Superior, Sala de Arecibo, y el expediente de dicho caso.[2] El querellado estuvo de acuerdo con someter el caso, aunque hizo algunas observaciones sobre el uso del expediente.[3] El Comisionado

---

[1] El procedimiento correcto hubiera sido solicitar permiso del Comisionado Especial y éste referir la petición a este Tribunal para que procediéramos a archivar dicho cargo. No obstante lo anterior, aceptamos, en esta etapa, el retiro del cargo.

[2] Los hechos que dieron lugar a dicho caso y otros procedimientos judiciales fueron los que motivaron el desaforo del Lic. Pedro Pérez Rodríguez —*In re Pérez Rodríguez*, 115 D.P.R. 547 (1984)— que tiene tangencia con este proceso disciplinario.

[3] Expresó que:

"Vuestro Honor, nosotros con respecto a ese ofrecimiento del expediente naturalmente tenemos que tener reparos en primer término porque no se dio cumplimiento por la distinguida compañera a la orden que dictó su Señoría en el acta de "pirtraya". La órden específicamente decía de que ella tenía la obligación dentro del término de 7 de días de manifestarnos que documentos de ese expediente se habrían de utilizar. Ese expediente tiene alrededor de noventa folios y el documento a que se refiere la compañera pues no hace otra cosa que un índice o un inventario de todos los documentos. Pero recordará, su Señoría, y surge de la transcripción del acta de "pirtraya" de la conferencia preliminar se dispuso que ella tenía la obligación de informarnos que documentos habría de utilizar y con que propósito se iba a utilizar tal documento. De manera que entonces nosotros poder presentar cualquier evidencia en contra respecto al documento, si es que había evidencia en contra, o allanarnos al contenido de este documento si era que

Especial validó la posición de las partes y dio el caso por sometido según lo ofrecido.

Luego de detallar la secuencia de hechos que surge de las constancias del expediente en el Caso Núm. Cs-80-2072, el Comisionado Especial estimó como razonables las conclusiones de hecho siguientes:

1. El señor Israel Candelaria Galán y la madre de éste, Doña Monserrate Galán comparecieron ante el notario Pedro Pérez Rodríguez a otorgar un pagaré, el cual se utilizó como prenda para tomar dinero a préstamo del Banco de San Juan. Se hicieron acompañar por una persona que impersonó a la hermana de Israel, de nombre Aida Candelaria Maldonado, y firmó por ésta el pagaré, falsificando su firma. Confrontado con la falsificación, el notario pagó al banco la suma adeudada bajo el pagaré ($15,051.03) y, en un esfuerzo por recobrar lo desembolsado, negoció con Israel Candelaria que éste le "vendiera" a su señora madre, Doña Fructuosa Rodríguez Rosado, la propiedad a que se refiere la escritura número 51 de 29 de septiembre de 1978. Esto se hizo mediante el pago de la suma adicional de $7,500, recibidos por Candelaria Galán en el acto del otorgamiento de dicha escritura.

2. Dicha escritura fue preparada por el notario Pedro Pérez Rodríguez y el querellado convino en que se otorgase ante él.

_____

lo expresaba el documento la realidad del asunto en que se quería probar con dicho documento. Así es que si se admite dicho expediente y sabemos que procesalmente su Señoría va a tener que admitirlo pero hacemos esta objeción para el récord. Procesalmente pues estamos en este momento en las misma condiciones que estabamos en el acta de "pirtraya" pidiéndole que nos dijera de esas 90 páginas que tiene ese expediente cuales se iban a utilizar y a que propósito para nosotros poder presentar prueba en contra. El expediente como se ha dicho es un caso que duró varios años en el Tribunal, tiene alrededor de 90 folios, tiene un gran número de alegaciones de diversas partes, manifestaciones, admisiones de hecho y nosotros entonces en estos momentos que vamos a refutar de eso. Precisamente por eso le pedimos en el acta de "pirtraya" y su Señoría lo ordenó que se nos dijera que documentos, vamos a llamar la atención a su Señoría del documento que nos notificó la compañera con fecha del 14 de noviembre y verá su Señoría que en ningún momento se expresa, simplemente tiene una enumeración de los documentos y en ningún momento se expresa que documentos de esos se van a utilizar. Queremos consignar esa objeción para récord." Transcripción de vista, 25 de noviembre de 1986, págs. 14–15.

El día del otorgamiento le leyó la escritura al señor Candelaria, le tomó la firma y las iniciales, vio que éste recibió y contó en su presencia los $7,500 que expresa la escritura, le preguntó el nombre de su esposa y al éste ofrecerlo se puso el mismo en el documento; se le adviritió [sic] de su derecho a que figurasen testigos en la misma y se le inquirió sobre su conformidad con el documento. Todo esto ocurrió en la oficina del notario en el Arecibo Shopping Center. Luego el notario se trasladó con el Lic. Pedro Pérez Rodríguez a la casa de la madre de éste, Doña Fructuosa Rodríguez Rosado, donde se procedió a completar las firmas en el documento.

3. Habiéndose limitado el notario Miguel A. Chaar Cacho al otorgamiento de la escritura según expresado anteriormente, expresa que no vio la finca ni verificó las colindancias, no sabía si se había hecho la partición y adjudicación entre los herederos (era un haber hereditario), no hizo estudio de título ni cotejó la existencia del embargo que se menciona y, en términos generales, actuó en base a la información que le transmitió el Lic. Pedro Pérez Rodríguez, quien era su amigo. No cobró por sus servicios como una deferencia a su amigo.

4. En un aparente esfuerzo por proteger o recobrar la suma en exceso de $22,000 que había desembolsado a Israel Candelaria Galán, se radicó una demanda —80–2072, Fructuosa Rodríguez Rosado y Pedro Pérez Rodríguez v. Israel Candelaria Galán y Aida Candelaria Maldonado, en la que se solicita se inscriba de la propiedad objeto de la escritura número 51 otorgada ante el querellado a favor de Doña Fructuosa Rodríguez una participación equivalente a la mitad de la misma. Luego de la vista en los méritos del caso, la parte demandante desistió con perjuicio y se le impuso el pago de $500 por concepto de honorarios de abogado y las costas.

5. El notario Miguel Chaar Cacho fue admitido a la profesión de abogado en el año 1965 y salvo dos años que trabajó en la Oficina de Asistencia Legal, ha estado dedicado a la práctica privada con oficina en el Arecibo Shopping Center. Goza de magnífica reputación en la comunidad de Arecibo, tanto en lo personal como profesional.

6. Luego de despejado el humo de estos hechos tenemos que Don Israel Candelaria Galán conservó intacta su propiedad, además recibió $7,500 en efectivo, se benefició en

$15,051.03 que el Lic. Pedro Pérez Rodríguez pagó por él al Banco de San Juan, se le resarció en $500 de honorarios que el Tribunal impuso a su favor, motivó una sanción al licenciado Pérez Rodríguez (In Re Pérez Rodríguez, 115 DPR 5[47] (1984) y este proceso de querella al Lic. Miguel A. Chaar Cacho y la génesis de todos estos acontecimientos con el consecuente accésit al señor Candelaria y cilicio a otros, lo fue cuando dicho señor trató de defraudar a su hermana logrando que otra persona se hiciera pasar por ella para tomar un dinero a préstamo al Banco de San Juan. Informe del Comisionado Especial, 14 de enero de 1987, págs. 8–10.

Ambas partes han comparecido ante nos para comentar el informe del Comisionado Especial. La Procuradora General Auxiliar sostiene que el primer cargo quedó probado totalmente. Entiende que la intervención del querellado fue la de un autómata legalizador de firmas y cita a *In re Cancio Sifre*, 106 D.P.R. 386, 396–397 (1977), y a *In re Meléndez Pérez*, 104 D.P.R. 770 (1976). El querellado sostiene que no hubo conducta lesiva a los principios y normas que rigen la práctica de la notaría y que de haberla sus actuaciones fueron hechas sin el beneficio de la norma que establecimos en *In re Laboy*, 113 D.P.R. 476 (1982). Resolvemos.

Hemos hecho un examen independiente de la documentación que tuvo ante sí el Comisionado Especial. Una lectura cuidadosa del testimonio del querellado, de los autos del Caso Núm. Cs-80-2072 y de los antecedentes de la controversia(5) nos convence de que las conclusiones de hecho tienen apoyo en dichas constancias.

---

(5) Recogidos en *In re Pérez Rodríguez*, 115 D.P.R. 547, 549–550 (1984), donde hallamos probado que:

"'1. El 12 de febrero de 1975 comparecieron cuatro personas ante el querellado, quien actuando como notario, en el documento notarial 25,850, manifiesta que el titulado Pagaré Colateral, que es el Exhibit IV, fue reconocido por Aida Margarita Candelaria ante él. La prueba desfilada demuestra fuera de toda duda que Aida Margarita Candelaria no compareció en forma alguna a hacer tal reconocimiento, ni el contrato de prenda que es el Exhibit V; este último reconocimiento lleva el número 25,851. Una persona que no era Aida Margarita Candelaria compareció y firmó como si fuera Aida Margarita Candelaria.

■ El querellado fue laxo en el cumplimiento de su función al depender demasiado de la confianza que le tenía a su compañero, amigo y vecino licenciado Pérez Rodríguez, lo que le movió a ser un autómata de la notaría. De ordinario ello daría lugar a una severa sanción disciplinaria, *In re Ríos Rivera*, 119 D.P.R. 586 (1987), pero hay dos (2) factores que favorecen al querellado.

■ Las fallas incurridas por el notario fueron hechas antes de que se resolvieran en *In re Laboy*, ante, págs. 481–482, donde dijimos que:

> En torno al primer cargo, se impone de inmediato la exoneración del querellado Florentino Machargo Barreras. Excepto por haber depositado erróneamente su confianza en un compañero abogado y prestarle gratuitamente sus servicios notariales, no incurrió en falta que amerite sanción disciplinaria alguna. Ciertamente todo el proceso sirve de ejemplo —extensivo al resto del notariado puertorriqueño— de que es

---

"'2. La persona que se hizo pasar como Aida Margarita Candelaria fue identificada con pleno conocimiento del engaño por Israel Candelaria que también reconoció los documentos y tal identificación también la hizo el gerente del banco, Eliseo Serrano Reyes, irresponsablemente porque él no conocía a doña Aida.

"'3. El querellado dependió de estas poco confiables identificaciones para desempeñar su función notarial y no utilizó las normas confiables y fehacientes de identificación de personas desconocidas para el notario que están prescritas por nuestro ordenamiento jurídico.

"'4. El querellado no presentó el pleito 78–1309 a que se alude en el segundo cargo y eventualmente pagó la deuda evidenciada por el pagaré —Exhibit IV y que obligaba a Aida Margarita Candelaria.

"'5. El pleito 80–2072 fue instado por el querellado y su señora madre para reclamar unos derechos que según se asevera en la demanda se originaron en una venta de participación hereditaria en un inmueble que hizo Israel Candelaria por escritura 51, de 29 de septiembre de 1978, ante el notario Miguel A. Chaar. La otra heredera es Aida Margarita Candelaria. Posteriormente y en virtud de sentencia judicial se otorgó una escritura de Partición y Adjudicación de Bienes Hereditarios, la núm. 13 de 4 de octubre de 1979 ante el notario Domingo Pillot Resto. Como puede observarse por la secuencia de las fechas, cuando, según se asevera en estos documentos, se adquiere la participación hereditaria en 1979, ésta no es un bien litigioso.

"'6. Por los hechos expuestos en la quinta determinación se dispone, en cuanto hechos, del tercer cargo. El bien adquirido no era litigioso.'"

menester evitar, en lo posible, este tipo de intervención notarial urgente e incidental, más bien ad hoc, en la cual se cae en la superficialidad y en el peligro potencial de convertirse en un simple observador de un negocio jurídico —función que rechazamos en *In re Meléndez Pérez*, 104 D.P.R. 770 (1976)— y, claro está, según la naturaleza de la transacción y las consecuencias perjudiciales que resulten de la misma, el conocimiento directo o constructivo, corre el riesgo de incurrir en serias faltas profesionales que ameriten medidas correctivas. *In re Lavastida, et al.*, 109 D.P.R. 45 (1979).

Ello, de por sí, no lo exime de responsabilidad. La omisión de analizar la situación y hacer las advertencias pertinentes viola el deber de ilustración y consejo que es inherente a la práctica del notariado. Dicho deber es aplicable por lo menos desde que resolvimos *In re Meléndez Pérez*, ante, págs. 774–776. Así lo señalamos en *In re Flores Torres*, 119 D.P.R. 578 (1987).

■ Pero debemos considerar que en este caso, lejos de perjudicarse, el querellante resultó beneficiado de todos los actos irregulares que su conducta motivó. El que realmente resultó perjudicado fue precisamente quien contrató los servicios del querellado, el licenciado Pérez Rodríguez. No hay indicio de que el licenciado Chaar Cacho actuara de mala fe.

■ Por las circunstancias presentes, *limitamos la sanción disciplinaria a una fuerte amonestación y reprimenda, y apercibirle de que en su conducta futura guarde una total deferencia y respeto a los postulados que rigen la profesión de abogado-notario. El sufrimiento y trauma que ha recibido durante todo este proceso no amerita castigo adicional.*

El Juez Asociado Señor Negrón García hace constar que suspendería al querellado, Lcdo. Miguel A. Chaar Cacho, del ejercicio del notariado en Puerto Rico por un periodo de seis (6) meses.