

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br><br>Edwin Belén Trujillo | 2012 TSPR 89<br><br>184 DPR \_\_\_\_ |

Número del Caso: CP-2008-8

Fecha: 13 de marzo de 2012

Oficina de la Procuradora General Auxilira

        Lcda. Zaira Girón Anadón
        SubProcuradora General

        Lcda. Minnie H. Rodriguez López
        Procuradora General Auxiliar

Abogado de la Parte Querellada:

        Lcdo. Hugo Rodríguez Díaz

Materia: Conducta Profesional- La suspensión será efectiva el 23 de mayo de 2012 fecha en que se le notificó al abogado de su suspensión inmediata.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re: Edwin Belén Trujillo      CP-2009-0013

PER CURIAM

En San Juan, Puerto Rico, a 13 de marzo de 2012.

En esta ocasión, nos vemos precisados a ejercer nuestra facultad disciplinaria contra un miembro de la profesión por entender que sus actuaciones se apartan de las normas éticas que rigen el ejercicio de la profesión de la abogacía y la notaría en nuestra jurisdicción. Por las razones que se exponen a continuación, ordenamos la suspensión inmediata por un término de tres meses al Lcdo. Edwin Belén Trujillo del ejercicio de la abogacía y la notaría. Veamos los antecedentes fácticos que dieron origen a la querella de autos.

I

El Lcdo. Edwin Belén Trujillo fue admitido al ejercicio de la abogacía el 27 de septiembre de

1956 y a la notaría el 8 de octubre del mismo año.[1]  El 7 de diciembre de 1999, los señores Rodolfo Font, William Encarnación y Robert Gómez presentaron ante nos una queja contra el licenciado Belén Trujillo (en adelante querellado) sobre conducta en violación de la ética profesional.  El 4 de abril de 2001, la Oficina de Inspección de Notarías "ODIN" sometió ante este Tribunal su informe en torno al caso de autos.  En este se concluyó que el licenciado Belén Trujillo infringió los Cánones 21, 35 y 38. 4 L.P.R.A. Ap.IX, C. 21, 35 y 38.  Asimismo, la ODIN manifestó que incurrió en una violación al Artículo 15(j) de la Ley Notarial, 4 L.P.R.A. sec. 2033.

En atención a ese informe, el 11 de mayo de 2007 este Tribunal dictó una orden al Procurador General para que procediera a someter los cargos contra el querellado por conducta antiética en el ejercicio de la profesión de la abogacía y la notaría.  La querella se presentó el 13 de agosto de 2009.  En relación a la violación al Canon 35, *supra,* se señala allí que el licenciado Belén Trujillo autorizó la escritura de compraventa -escritura pública número 13- mediante la cual Caguas Warehouse Lumber, Inc., vendió al Concilio Misión Cristiana Fuente de Agua Viva, Inc., -corporación sin fines de lucro- una finca ubicada en el Barrio Hato Tejas del municipio de Bayamón.

---

[1] Anteriormente, por hechos ajenos a los de este caso, fue suspendido de la práctica de la abogacía por un término de un año  y seis meses. En diciembre de 1991 emitimos una resolución mediante la cual le concedimos la reinstalación al ejercicio de la profesión. Véase, In re: Belén Trujillo, 126 D.P.R. 743 (1990).

Posteriormente, esa finca fue objeto de un litigio sobre su titularidad.  Durante los procedimientos de ese litigio, el querellado fue citado como testigo e hizo además una declaración jurada a favor de la Congregación Independiente Restauración en Cristo, (en adelante, la Congregación) organismo religioso que reclamaba ser el verdadero titular de la finca antes mencionada.  En esencia, en esa declaración expresó que la Congregación era el dueño real de la finca en controversia y no el Concilio quien había sido designado como comprador en la escritura pública número 13.  Admitió que había hecho constar en esa escritura pública que el Concilio era el comprador de la finca con el fin de facilitar su inscripción en el Registro de la Propiedad debido a que esa entidad, a diferencia de la Congregación, contaba con personalidad jurídica.[2]  Por razón de esta declaración se le imputó al querellado faltar a su deber de sinceridad y honestidad en el ejercicio de la

---

[2] En específico, el querellado por medio de la declaración jurada expone que:

> "Que no obstante lo anterior, se incluyó como parte puramente formal al Concilio Fuente de Agua Viva, Inc.  a los únicos efectos de cumplir con aquella disposición del "Contrato y Acuerdo de Fusión, etc." que establece que, aunque se reconoce el derecho de pleno dominio a la Congregación, se reconoce un derecho de fideicomiso limitado a la inscripción registral en el Registro de la Propiedad al Concilio Fuente de Agua Viva, Inc.  Esta designación del Concilio Fuente de Agua Viva, Inc. ("compradora") fue nominal a solicitud del representante autorizado del Concilio en aquel momento, yo [sic] de conformidad de las disposiciones de la "Filosofía" y de los principios bíblicos que me explicó en particular Hageo 2:8; I Crónicas, Cap. 29.  La inscripción registral conforme a la "Filosofía" y al "Acuerdo y Contrato de Fusión" responde, única y exclusivamente, a un propósito instrumental de facilitar una inscripción a través de una corporación, porque en aquel momento la Congregación no está la [sic] incorporada".

profesión lo que esta prohibido al amparo del Canon 35 del Código de Ética Profesional, *supra*.

Además, en relación al Artículo 15(j) de la Ley Notarial se adujo que el licenciado Belén Trujillo no proveyó en la escritura pública número trece (13) las advertencias específicas requeridas en la compraventa de la finca. En específico, se hace alusión a la falta de orientación a los otorgantes sobre la relación existente entre el Concilio y la Congregación, cuando este tenía conocimiento de ella. En ese sentido, se esperaba que este orientara a los otorgantes que en el año 1991 el Concilio y la Congregación suscribieron un acuerdo de afiliación intitulado *Contrato y Acuerdo de Fusión y de Integración al Concilio Misión Cristiana Fuente de Agua Viva, Inc., y de su Consejo Apostólico*. Producto de ese convenio, se disolvió la Congregación quedando únicamente el Concilio. También se estableció, como parte de ese acuerdo, una cláusula que disponía que las propiedades de la Congregación fueran inscritas a favor del Concilio. No obstante, se añadió que de surgir eventualmente una separación entre esas entidades, las propiedades regresarían a la Congregación.

En lo atinente a la violación del Canon 21, *supra*, se indicó que el deber de lealtad impuesto por ese precepto fue quebrantado por el querellado al suscribir una declaración jurada en la que expuso que la designación del Concilio como comprador en la escritura pública número 13

fue una nominal.  En otras palabras, la declaración jurada era contraria a los intereses del Concilio porque impugna su titularidad sobre la propiedad en controversia.

Finalmente, se alegó también que violó el Canon 38, *supra,* debido a que en representación suya y de una entidad en proceso de incorporación, hizo una oferta para opcionar la compraventa de una finca perteneciente al Concilio.  Esa propiedad inmueble había sido adquirida por el Concilio en una compraventa que se elevó a escritura pública –número 30- y la cual fue autorizada por el notario Rafael Alen González.  Asimismo, contactó y encomendó a un agente de bienes raíces para que este realizara trámites para la venta de las propiedades que surgen en las escrituras número 13 y 30.

El 2 de diciembre de 2009, el licenciado Belén Trujillo presentó su contestación a la querella.  Alegó que no violó el Canon 35, *supra*.  Sostuvo que la redacción de la escritura pública número 13 fue conforme a la voluntad del Concilio y la Congregación según se expresó en el contrato privado de afiliación celebrado entre esas entidades.  Es decir, que las propiedades se inscribirían a favor del Concilio, pero al desafiliarse se le devolvería a la Congregación las propiedades inmuebles.

En relación a la insuficiencia de las advertencias en el documento público, el querellado se limitó a señalar que no tenía la obligación de hacer advertencia alguna al respecto. Esto pues los efectos del contrato de fusión

recaían únicamente sobre las entidades allí contratantes y no tenían efecto sobre terceros.

En cuanto a la imputación de violación al Canon 21, *supra,* afirmó que su intervención en el juicio fue en carácter de testigo y no como abogado de las partes otorgantes. Por ende, no infringió el deber de lealtad que cobija la relación abogado-cliente.

Sobre la imputación de infringir el Canon 38, *supra,* aseveró que sus gestiones para la venta de los terrenos en controversia no se relacionan con sus labores como notario ni como abogado. Añadió que su oferta de compra es en relación a un terreno adquirido mediante la escritura pública número 30 la cual fue autorizada por otro notario; y su gestión se limitó únicamente a contactar posibles compradores para esos predios de terreno.

Así las cosas, el 8 de febrero de 2010, emitimos una resolución mediante la cual nombramos a la Hon. Orsini Zayas, exjueza del Tribunal de Primera Instancia, Comisionada Especial para que evaluara la prueba en relación a este caso y luego nos presentara un informe con sus determinaciones y recomendaciones. Tras la celebración de varias vistas evidenciarias, la Comisionada nos presentó su informe. En este se determinó que el querellado no cometió conducta alguna en violación a los cánones de ética que se le imputan. En relación al cargo por violación al Canon 35, *supra*, se expresó que el licenciado Belén Trujillo no participó de ninguna manera en el convenio de

fusión entre ambas entidades y aun cuando advino en conocimiento del acuerdo de fusión, ello no tenía relevancia para el negocio que ante él se concretó. Referente a la violación al Artículo 15(j) de la Ley Notarial, indicó que de la queja no surge nada al respecto y que las imputaciones a esta falta notarial surgieron luego de presentada la queja. En cuanto al cargo por infracción al Canon 21, *supra,* sostiene que el querellado no actuó como abogado de las partes en ningún momento. Añadió que la declaración jurada fue prestada en capacidad de testigo, y no en carácter de abogado de alguna de esas entidades. Finalmente, en relación al cargo por violación al Canon 38, *supra,* señaló que el querellado realizó gestiones para la venta de unas propiedades que no se asocian con la escritura número 13 que autorizó, sino con la escritura número 30 la cual fue otorgada ante otro notario. Según los argumentos antes expuestos, la Comisionada nos recomendó desestimar la querella en contra del licenciado Belén Trujillo.

Consecuente a lo anterior, emitimos una resolución el 12 de noviembre de 2010 en la que autorizamos a desistir del tercer cargo imputado en la querella, el cual hace alusión a la violación al Canon 21, *supra.* No obstante, dejamos vigentes los demás cargos señalados en la querella. En consideración a la situación fáctica planteada, procedemos a dirimir las imputaciones a la infracción de

los Cánones 35, 38 y la falta al Artículo 15(j) de la Ley Notarial, *supra*.

## II

## A

La profesión de la notaría es una función que requiere cuidado y que debe ser ejercida con sumo esmero y celo profesional. In re Vera Vélez, 148 D.P.R. 1, 6 (1999). El notario es custodio de la fe pública notarial. In re Rivera Arvelo y Ortiz Velázquez, 132 D.P.R. 840 (1993). En ese sentido se le ha revestido por Ley de la autoridad suficiente para dar fe y autenticidad a los negocios jurídicos, actos y otros hechos extrajudiciales que ante él se realicen. Íd.

Como custodio de la fe pública, cuando un notario autoriza un documento presuntamente da fe y "asegura que ese documento cumple con todas las formalidades de ley, formal y sustantivamente, que el documento es legal y verdadero, y que se trata de una transacción válida y legítima". In re Feliciano Ruiz, 117 D.P.R. 269, 275 (1986). Es precisamente esta presunción de legalidad, veracidad y legitimidad lo que le brinda certeza, garantía y eficacia al documento notarial. In re Rivera Aponte, 169 D.P.R. 738, 742 (2006); In re Ramos, 104 D.P.R. 568 (1976). Por eso, es imprescindible que el notario observe la mayor pureza y honestidad en el descargo de la fe pública notarial. In re Ramos, supra.

Al ejercer esta función pública, el notario debe cumplir estrictamente tanto con la Ley Notarial como con el Código de Ética Profesional, In re Rivera Aponte, supra. En relación al deber de sinceridad y honradez, el Canon 35, *supra,* dispone que "[l]a conducta de cualquier miembro de la profesión legal ante los tribunales para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada."

El canon antes citado compele a los abogados a ejercer su magisterio con honradez y sinceridad, así como a comportarse de manera digna y honorable, tanto en su labor de abogado como en su función notarial. In re Torres Olmeda, 145 D.P.R. 324 (1998). En repetidas ocasiones hemos expresado que el faltar a la veracidad de los hechos es una de las faltas más graves que puede cometer un notario. In re Vera Vélez, supra; In re Landing; y Aulet, 107 D.P.R. 103 (1978). La certificación de un hecho falso constituye un acto detrimental a la fe pública. In re Torres Olmeda, supra; In re Peña Clos, 135 D.P.R. 590 (1994). Asimismo, el dar fe de un hecho falso "[n]o sólo quebranta la fe pública notarial, sino también socava la integridad de la profesión al incumplir con el deber de honradez y sinceridad que a todo abogado le impone el Canon 35 del Código de Ética Profesional". In re Rivera Arvelo y Ortiz Velázquez, pág. 863.

El deber con la verdad es de tal trascendencia que incluso hemos pronunciado que no se requiere el elemento de

intención para faltar a la fe pública y a los cánones. In re Chaar Cacho, 123 D.P.R. 655 (1989). Ese quebrantamiento puede ser producto de un desempeño profesional carente de la cautela y el celo que demanda la función pública del notario o de una confianza desmesurada en las manifestaciones de otros compañeros de la profesión. In re Vera Vélez, supra; In re Chaar Cacho, supra. Para evitar que un notario asevere, consciente o inconscientemente, un hecho falso, este Tribunal le ha impuesto el deber de hacer las averiguaciones mínimas que requieren las normas más elementales de la profesión y que en aquellas ocasiones en que tenga duda sobre lo expresado por el otorgante, indague más allá de lo requerido comúnmente. In re Vera Vélez, supra.

Por otro lado, anteriormente hemos establecido que consignar un hecho falso en un documento público, constituye a su vez una violación al Canon 38 de los Cánones de Ética Profesional, *supra*. In re Vera Vélez, supra. Este precepto ético exige de los abogados que se esfuercen, al máximo de su capacidad, en la exaltación del honor y dignidad de la profesión. *Id*. En lo aquí pertinente este canon dispone: "El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta impropia profesional…". 4 L.P.R.A. Ap. IX, C. 38.

Además, es sabido que todo abogado debe evitar hasta la apariencia de conducta impropia. Véase, Canon 38, *supra*. Esta exigencia se fundamenta "en la idea de que la confianza e imagen de la profesión se lacera no sólo cuando se viola una norma específica de los cánones de ética profesional, sino también cuando la conducta del abogado parece impropia." In re Pons Fontana, Op. De 23 de junio de 2011, 2011 T.S.P.R. 108, 2011 J.T.S. 113, 182 D.P.R. ___ (2011).

B

El notario, al autorizar una escritura pública, tiene cuatro deberes principales:

> 1. indagar la voluntad de los otorgantes; 2. formular la voluntad indagada; 3. investigar ciertos hechos y datos de los que depende la eficacia o validez del negocio; 4. darles a los otorgantes las informaciones, aclaraciones y advertencias necesarias para que comprendan el sentido, así como los efectos y consecuencias del negocio, y se den cuenta de los riesgos que corren en celebrarlo. Chévere v. Cátala, 115 D.P.R. 432, 438 (1984).

En cuanto a las advertencias notariales, el Artículo 15(j), de la Ley Notarial, *supra*, dispone:

> …
>
> (f) El haberles hecho de palabra a los otorgantes en el acto del otorgamiento las reservas y advertencias legales pertinentes. No obstante, se consignarán en el documento aquellas advertencias que por su importancia deban, a juicio prudente del notario, detallarse expresamente.

El deber de ilustrar a los otorgantes tiene el objetivo de lograr que estos concurran al acto notarial en un estado de conciencia informada. De esa forma,

comprenderán el sentido, así como los efectos y consecuencias, del negocio jurídico que van a llevar a cabo y se percatarán de los riesgos que corren al celebrarlo. Chévere v. Cátala, supra. En el cumplimiento de esta obligación, el notario debe cerciorarse de hacerles a las partes todas aquellas explicaciones, aclaraciones y advertencias necesarias para lograr el consentimiento informado de los otorgantes. Feliciano v. Ross, 165 D.P.R. 649 (2005); In re Pizarro Colón, 151 D.P.R. 94, 106 (2000). Así pues, el consejo del notario debe guiar la redacción del documento público y dar luz en el acto final del otorgamiento. Lo anterior es requerido debido a que "[l]a fe pública notarial tiene como base la voluntad ilustrada de los contratantes". Id; In re Meléndez Pérez, 104 D.P.R. 770, 776 (1976).

El ejercicio de la notaría trasciende la mera legalización de unas firmas. Su actuación "implica una gestión intelectual y una aplicación inteligente de los principios de derecho positivos y jurisprudenciales". In re Salas Davis, 145 D.P.R. 539, 544 (1998).

### III

Debemos examinar si el querellado infringió el deber de sinceridad y honestidad que impone las normas de ética de la profesión de la abogacía.

Del trasfondo fáctico de este caso surge que el querellado autorizó la escritura pública número 13 en la cual designó como comprador de una finca al Concilio. No

obstante, con posterioridad al pleito sobre la titularidad de esa propiedad inmueble, prestó una declaración jurada en la que afirmó que el dueño de la finca era la Congregación. Además, expresó que la designación del Concilio era nominal a los fines únicos de facilitar la inscripción en el Registro de la Propiedad porque la Congregación no tenía personalidad jurídica. Añadió que la designación del Concilio fue conforme al acuerdo de fusión celebrado entre el Concilio y la Congregación. Como es ya sabido, en ese convenio se dispuso que las propiedades de la Congregación serían inscritas a nombre del Concilio, pero de separarse ambas entidades las propiedades regresarían a la Congregación.

Colegimos que el querellado infringió su deber de sinceridad y honestidad al designar como comprador al Concilio cuando tenía razones para pensar que la parte adquirente era en realidad otra persona o entidad. Siendo únicamente el Concilio un testaferro en el contrato de compraventa.

El querellado debió abstenerse de autorizar la escritura pública de compraventa. La fe pública le otorga al notario la responsabilidad de hacer constar la verdad en los documentos públicos, y el no cumplir con ella es considerada una falta grave en el ejercicio de la abogacía. Al así actuar, el notario no fue íntegro con sus deberes impuestos por la fe pública notarial. Es harto sabido, que actuar conforme a la voluntad de las partes no subsana la

infracción cometida. El notario, como abogado, debe actuar conforme a su propia conciencia. La voluntad de las partes u otorgantes no es óbice para que el notario cumpla con sus deberes.

La actuación del querellado, a su vez, incidió sobre sus obligaciones éticas, faltando así al Canon 38, *supra*. Anteriormente, hemos expresado que el faltar a la verdad en un documento público es un acto que infringe el honor y dignidad de la profesión.

En lo concerniente a la falta al Artículo 15(j) de la Ley Notarial, *supra*, estimamos que una advertencia no subsanaría la falta de veracidad en la escritura pública. Es decir, si el comprador era realmente la Congregación o cualquier otra persona que no fuera el Concilio, este último no podía figurar como tal en la escritura pública. Ello equivaldría a advertir que en el documento público se instituyó un testaferro, lo cual está prohibido en nuestro ordenamiento jurídico. Ante los hechos particulares de este caso, no procede este cargo.

Por último, es doctrina reiterada que al determinar la sanción disciplinaria aplicable al abogado querellado, podemos tomar en cuenta factores atenuantes o agravantes tales como: la reputación del abogado en su comunidad, el previo historial de este, si es su primera falta, la aceptación de la falta y su sincero arrepentimiento, si se trata de una conducta aislada, el ánimo de lucro que medió en su actuación, resarcimiento al cliente y cualesquiera

otras consideraciones ya bien atenuantes o agravantes que medien de acuerdo a los hechos. In re: Guadalupe, Colón, 155 D.P.R. 135 (2001); In re Vélez Barlucea, 152 D.P.R. 298 (2000); In re Díaz Ortiz, 150 D.P.R. 418, 427 (2000).

En el caso de autos, tomamos como atenuantes a favor del licenciado Belén Trujillo el hecho que durante su carrera profesional de más de 50 años no había sido objeto de alguna medida disciplinaria hasta el 1990, es decir, hace más de 20 años. Tampoco surge que sus actuaciones hayan sido con algún ánimo de lucro.

IV

Por los fundamentos que anteceden, ordenamos la suspensión inmediata del Lcdo. Edwin Belén Trujillo del ejercicio de la profesión de la abogacía y la notaría por un término de tres meses, contados a partir de la notificación de esta Opinión *Per Curiam* y Sentencia.

El querellado tiene el deber de notificar a todos sus clientes su inhabilidad para continuar con su representación y deberá devolver a estos los expedientes de los casos pendientes, así como los honorarios recibidos por trabajo no rendido.

Además, tiene la obligación de acreditar y certificar ante este Tribunal el cumplimiento con lo anterior, dentro de un término de 30 días. Asimismo, tiene el deber de informar de inmediato su suspensión a los foros judiciales y administrativos.

Finalmente, el Alguacil de este Tribunal deberá incautar la obra y el sello notarial del señor Belén Trujillo y entregar los mismos a la Directora de la Oficina de Inspección de Notarías para la correspondiente investigación e informe.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Edwin Belén Trujillo

CP-2009-0013

SENTENCIA

En San Juan, Puerto Rico, a 13 de marzo de 2012.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de la presente Sentencia, decretamos la suspensión inmediata del ejercicio de la abogacía y de la notaría al Lcdo. Edwin Belén Trujillo por un término de tres (3) meses, contados a partir de la notificación de esta Sentencia.

El abogado tiene el deber de notificar a todos sus clientes su inhabilidad para continuar con su representación y deberá devolver a estos los expedientes de los casos pendientes, así como los honorarios recibidos por trabajo no rendido.

Además, tiene la obligación de acreditar y certificar ante este Tribunal el cumplimiento con lo anterior, dentro de un término de treinta (30) días. Asimismo, tiene el deber de informar de inmediato su suspensión a los foros judiciales y administrativos.

Finalmente, el Alguacil de este Tribunal deberá incautar la obra y el sello notarial del

señor Belén Trujillo y entregar los mismos a la Directora de la Oficina de Inspección de Notarías para la correspondiente investigación e informe.

Notifíquese personalmente.

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton disiente por entender que no se justifica descartar el Informe sometido por la Comisionada especial que atendió la querella de autos y por entender que el curso de acción seguido por el Tribunal afecta innecesariamente la seguridad jurídica de transacciones donde las partes contratantes interesan realizar conscientemente una simulación relativa válida que no transgreda el orden público o la ley. La Jueza Asociada señora Fiol Matta, la Juez Asociada señora Rodríguez Rodríguez y el Juez Asociado señor Estrella Martínez no intervinieron.

Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo