ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| B2B RE INVESTMENTS LLC<br><br>Apelada<br><br><br>V.<br><br><br>MÁXIMA DINELIS RODRÍGUEZ MARTÍNEZ; JUAN CARLOS VERAS RODRÍGUEZ Y OTROS<br><br>Apelantes | TA2025AP00470 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2024CV06360<br><br><br>Sobre: Sustitución de pagaré extraviado |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

Marrero Guerrero, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 16 de diciembre de 2025.

Comparecen la Sra. Máxima Rodríguez Martínez (señora Rodríguez Martínez) y el Sr. Juan Carlos Veras Rodríguez (señor Veras Rodríguez) (en conjunto, apelantes) y solicitan la revisión de una *Sentencia Sumaria* emitida el 22 de septiembre de 2025 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI).[1] En dicha determinación, el foro primario declaró Ha Lugar la petición de sentencia sumaria presentada por B2B Re Investments LLC (B2B o apelado) y, en consecuencia, lo declaró único y legítimo acreedor del pagaré en controversia y ordenó emitir un pagaré a su favor en sustitución del original. Asimismo, el TPI declaró ineficaz e inexistente el pagaré otorgado por los apelantes a favor de EMI Equity Mortgage, Inc. (EMI), entre otros remedios.

Por los fundamentos que expondremos a continuación, se confirma el dictamen apelado.

---

[1] Entrada Núm. 113 del caso SJ2024CV06360 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC). Notificada el 23 de septiembre de 2025.

**I.**

Este caso se originó el 8 de julio de 2024, cuando B2B presentó una *Demanda* en contra de la señora Rodríguez Martínez, el señor Veras Rodríguez, y otros demandados desconocidos, para sustituir un pagaré hipotecario extraviado.[2] Entre otras alegaciones, adujo que los apelantes suscribieron un pagaré hipotecario por $495,000.00 a favor de EMI, juramentado mediante el afidávit número 2,165 del notario David Cardona Dingui y garantizado con una hipoteca sobre un inmueble en San Juan. Sostuvo que, tras varias cesiones de derechos, títulos e intereses desde EMI a Doral Bank, Banco Popular de Puerto Rico (BPPR), Luna Commercial, LLC (Luna), Estrella Commercial, LLC (Estrella) y, finalmente, B2B, el pagaré se extravió, se destruyó inadvertidamente o los deudores o desconocidos ostentaron su posesión ilegal. Alegó que la deuda evidenciada por el pagaré hipotecario no había sido satisfecha en su totalidad. Por lo anterior, el apelado solicitó que el TPI lo declarara como único acreedor y autorizara la emisión de un pagaré sustituto bajo los mismos términos del original. Además, peticionó que se declarara ineficaz e inexistente el pagaré suscrito por los apelantes el 17 de marzo de 2005 a favor de EMI.

Posteriormente, el 4 de septiembre de 2024, los apelantes presentaron su alegación responsiva, en la que negaron ser los tenedores del pagaré en controversia y alegaron que realizaron pagos para amortizar el balance de la deuda hipotecaria y llegaron a acuerdos de pago consignados en el caso KCD2009-1460.[3]

El 4 de noviembre de 2024, B2B presentó una *Moción de Sentencia Sumaria*,[4] en la que arguyó que no existían controversias sobre los hechos materiales del caso y que era el único acreedor

---

[2] *Íd.*, Entrada Núm. 1 en SUMAC.
[3] *Íd.*, Entrada Núm. 15 en SUMAC.
[4] *Íd.*, Entrada Núm. 19 en SUMAC.

legítimo, ya que el pagaré que se extravió no se había negociado, cedido, endosado o transferido.

Por su parte, el 2 de diciembre de 2024, la señora Rodríguez Martínez y el señor Veras Rodríguez se opusieron a que se dictara sentencia sumaria.[5] Ello, al esgrimir que B2B alegó que era el único acreedor del pagaré hipotecario en controversia sin presentar prueba admisible y fehaciente. De otro lado, indicaron que el apelado no emplazó a los últimos poseedores conocidos ni demostró mediante declaraciones juradas la inexistencia de controversia sustancial, lo que generaba dudas sobre el extravío, la titularidad, la buena fe de B2B, su legitimación para peticionar la sustitución del pagaré y si este fue cedido o negociado. Además, planteó que en el pleito no se incluyó como parte demandada a EMI ni a Estrella, quienes eran las últimas tenedoras conocidas del pagaré y como como tal, parte indispensable.

El 11 de diciembre de 2024, el TPI emitió una *Minuta/Resolución* de la cual surgió que, en igual fecha, celebró una vista donde autorizó a B2B a enmendar la *Demanda* para incluir a las partes faltantes y declaró No Ha Lugar la moción de sentencia sumaria, sin perjuicio.[6]

Así las cosas, el 30 de diciembre de 2024, B2B presentó una *Demanda Enmendada* en la que incluyó como parte demandada a Federal Deposit Insurance Corporation (FDIC), BPPR, Condado 3, LLC (Condado 3), Luna y Estrella por ser acreedoras previas o posibles tenedoras del pagaré extraviado.[7]

Eventualmente, el 21 de enero de 2025, los apelantes presentaron una *Contestación a Demanda Enmendada*, en la que negaron ser los tenedores del pagaré objeto del recurso.[8]

---

[5] *Íd.*, Entrada Núm. 30 en SUMAC.
[6] *Íd.*, Entrada Núm. 37 en SUMAC.
[7] *Íd.*, Entrada Núm. 38 en SUMAC.
[8] *Íd.*, Entrada Núm. 52 en SUMAC.

El 22 de enero de 2025, EMI presentó una *Contestación a la Demanda,* en la que se allanó a que continuaran los procedimientos para la cancelación del pagaré hipotecario extraviado.[9]

Tiempo después, el 25 de febrero de 2025, los apelantes presentaron una *Moción Solicitando Anotación de Rebeldía y Descalificación.*[10] En esta, solicitaron la anotación de rebeldía contra BPPR, FDIC, Luna y Estrella por no presentar una alegación responsiva oportunamente. Esto debido a que BPPR, EMI y FDIC fueron emplazados el 21 de enero de 2025, por lo que su término de treinta (30) días para contestar la *Demanda* vencía el 20 de febrero de 2025. Además, plantearon que Luna y Estrella fueron emplazadas el 22 y 24 de enero, de modo que sus términos vencían el 21 y 24 de febrero de 2025, respectivamente. A su vez, peticionaron la descalificación del abogado de EMI por supuesto conflicto de interés al ser el mismo notario que suscribió el pagaré alegadamente extraviado. Por ello, solicitaron el desglose y la eliminación de la contestación a la demanda de EMI.

Al siguiente día, la señora Rodríguez Martínez y el señor Veras Rodríguez solicitaron la descalificación del bufete Ferraiuoli LLC como representación legal de B2B por alegada representación adversa sucesiva y/o simultánea adversa.[11] Argumentaron que el bufete representó previamente a FDIC en la consolidación de los bancos RG Premier Bank, Eurobank y Westernbank que se acogieron a la quiebra en el 2010 y al BPPR en casos de hipotecas en el 2016, por lo que tenía acceso a información confidencial. Asimismo, precisaron que dicho bufete representó a Luna en casos de ejecución de hipoteca y cobro de dinero. Sostuvieron que la omisión inicial de

---

[9] *Íd.,* Entrada Núm. 53 en SUMAC.
[10] *Íd.,* Entrada Núm. 66 en SUMAC.
[11] *Íd.,* Entrada Núm. 67 en SUMAC.

incluir a esas entidades como partes evidenciaba conflictos de intereses que comprometían la integridad del proceso.

El 27 de marzo de 2025, B2B se opuso a la solicitud de descalificación.[12] En esta, planteó que los apelantes carecían de legitimación activa para invocar la descalificación de su representación legal, en vista de que no demostraron que causó un perjuicio o ventaja indebida. Expuso que dicha solicitud de descalificación se presentó de mala fe y que no existía conflicto de interés entre sus anteriores clientes, ya que FDIC, BPPR y Luna no eran acreedores actuales y solo figuraban como demandados por ser los antecesores en derecho de B2B. Así, puntualizó que los apelantes no demostraron cual era la información a la que el bufete Ferraiuoli tenía acceso que pudiera ocasionar un interés adverso entre su representación actual de B2B y la de sus clientes anteriores en la reclamación de epígrafe. Por último, señaló que en este caso no se afectaban los derechos de los apelantes, ya que no eran los tenedores del pagaré y admitieron que la deuda no había sido pagada en su totalidad.

El 3 de abril de 2025, la señora Rodríguez Martínez y el señor Veras Rodríguez presentaron una *Dúplica a "Moción en Oposición a 'Moción en cumplimiento de Orden del 6 de febrero de 2025 y Solicitud de Descalificación'".*[13] Allí, esbozaron que B2B al afirmar que los apelantes no poseían información respecto a las confidencias que se compartieron, reconoció inadvertidamente que contaban con confidencias y secretos que se utilizarían en perjuicio y con ventaja indebida en contra de todos los codemandados. Por lo que, razonaron que esto era causa suficiente para descalificar a la representación legal de la parte apelada. Además, esgrimieron que aun cuando el bufete no poseyera información que causara una

---

[12] *Íd.*, Entrada Núm. 74 en SUMAC.
[13] *Íd.*, Entrada Núm. 76 en SUMAC.

ventaja indebida, la representación de B2B plasmaba una apariencia impropia lo cual era igualmente impermisible.

También, indicaron que la representación legal de B2B ignoró que al momento en que comenzara el descubrimiento de prueba para demostrar el tracto del instrumento tendría que confrontar a sus actuales y anteriores clientes. A tales efectos, sostuvieron que dichas circunstancias causaban un actual o potencial conflicto por representación simultanea y sucesiva adversa. Por otra parte, manifestaron que en el presente caso existía legítimas dudas sobre quien ostentaba al presente la titularidad del pagaré alegadamente extraviado. Señalaron que B2B no ha presentado prueba admisible y suficiente para establecerse como tendedor de aludido pagaré para que se expidiera un sustituto. Por tanto, argumentaron que el TPI no estaba en posición de adjudicar el caso de epígrafe.

Posteriormente, el 18 de junio de 2025, B2B presentó una *Solicitud de Sentencia Sumaria* donde alegó que no había asuntos en controversia que impidieran la disposición de la reclamación por la vía sumaria.[14] En síntesis, arguyó que mediante la prueba presentada se evidenció el tracto del pagaré extraviado y del modo que B2B adquirió los derechos, títulos e intereses sobre el instrumento negociable. Por lo cual, solicitó que se suscribiera un pagaré hipotecario a favor del apelado bajo los mismos términos, condiciones y cláusulas del original. Además, peticionó que se declarara ineficaz el pagaré suscrito el 17 de marzo de 2005.

El 7 de julio de 2025, la señora Rodríguez Martínez y el señor Veras Rodríguez presentaron una *Urgente Solicitud de Desestimación por Falta de Jurisdicción sobre Condado 3 LLC y Otros Extremos*.[15] En esencia, alegaron que el foro primario carecía de jurisdicción sobre Condado 3 ya que no fue emplazado conforme a lo establecido en la

---

[14] *Íd.*, Entrada Núm. 85 en SUMAC.
[15] *Íd.*, Entrada Núm. 86 en SUMAC.

Ley Núm. 164 de 16 de diciembre de 2009 (Ley Núm. 164-2009), según enmendada, conocida como la "*Ley General de Corporaciones*" 14 LPRA sec. 3501 *et seq*. Señalaron que, dicha ley tenía preeminencia sobre las normas procesales contenidas en las Reglas de Procedimiento Civil. Así, sostuvieron que Condado 3 era una corporación foránea no autorizada en Puerto Rico, por lo que tenía que ser emplazada a través del Secretario de Estado. Por lo cual, razonaron que transcurrido el término para llevar el cabo el emplazamiento solo procedía ordenar la desestimación de la demanda.

En esta misma fecha, luego de haber examinado la solicitud de descalificación presentada por los apelantes, el TPI emitió una *Resolución*.[16] Mediante referido dictamen, determinó que la señora Rodríguez Martínez y el señor Veras Rodríguez no poseían legitimación activa para presentar la solicitud de descalificación. Fundamentó que dicha solicitud estaba basada en meras alegaciones y generalidades que no estaban sustentadas con prueba alguna. Ante ello, juzgó que los promoventes no habían puesto al tribunal en la posición de concluir que existía un conflicto de intereses por representación simultanea o sucesiva adversa. Por tal razón, declaró No Ha Lugar la solicitud de descalificación presentada por los apelantes.

Así las cosas, el 4 de agosto de 2025, la señora Rodríguez Martínez y el señor Veras Rodríguez presentaron su *Oposición a Segunda Solicitud de Sentencia Sumaria*.[17] En esta, esgrimieron que la solicitud de sentencia sumaria presentada por el apelado era prematura e improcedente porque: (1) faltaba una parte indispensable, Condado 3, debido a que no fue emplazada conforme a derecho; y (2) B2B no presentó evidencia suficiente y admisible para

---

[16] *Íd.*, Entrada Núm. 90 en SUMAC. Notificado el 14 de julio de 2025.
[17] *Íd.*, Entrada Núm. 101 en SUMAC.

probar que tenía derecho a que se ordenara la reproducción del pagaré alegadamente extraviado. Además, sostuvieron que, en ausencia de un adecuado descubrimiento de prueba, los apelantes no les constaba que B2B era el legítimo dueño del instrumento.

El 11 de agosto de 2025, B2B presentó su *Moción en Cumplimiento de Orden (Ent #93) y con Relación a "Urgente Solicitud de Desestimación por Falta de Jurisdicción sobre Condado 3 LLC y Otros Extremos".*[18] En síntesis, indicó que Condado 3 fue emplazado conforme a la Regla 4.6 de Procedimiento Civil, 32 LPRA Ap. V, R. 4.6. A esto, agregó que mencionada corporación no era una parte indispensable en el caso de *autos*, por tanto, una determinación sobre emplazamiento inadecuado no conllevaría la desestimación de la acción.

Subsecuentemente, inconforme con la *Resolución* emitida el 7 de julio de 2025, la señora Rodríguez Martínez y el señor Veras Rodríguez acudieron mediante *Peticion de Certiorari* ante este tribunal apelativo bajo el alfanumérico TA2025CE00414 el 5 de septiembre de 2025.[19] No obstante, denegamos expedir dicho recurso.[20]

Posteriormente, el 22 de septiembre de 2025, el foro primario emitió una *Resolución.*[21] Mediante esta, adoptó por referencia los argumentos manifestados por B2B en su escrito presentado el 11 de agosto de 2025. En consecuencia, declaró No Ha Lugar la solicitud de desestimación por falta de jurisdicción de los apelantes y ordenó la continuación de los procedimientos.

En esta misma fecha, el TPI también emitió su *Sentencia Sumaria.*[22] Allí, luego de examinar los escritos presentados por las

---

[18] *Íd.*, Entrada Núm. 106 en SUMAC.
[19] *Íd.*, Entrada Núm. 110 en SUMAC.
[20] *Íd.*, Entrada Núm. 111 en SUMAC.
[21] *Íd.*, Entrada Núm. 112 en SUMAC. Notificada el 23 de septiembre de 2025.
[22] *Íd.*, Entrada Núm. 113 en SUMAC. Notificada el 23 de septiembre de 2025.

partes, al igual que la prueba que obra en el expediente, formuló las siguientes determinaciones de hechos:

1. Por valor recibido el 17 de marzo de 2005, Máxima Dinelis Rodríguez Martínez t/c/c Máxima Rodríguez Martínez y Juan Carlos Veras Rodríguez (los "Deudores") suscribieron un pagaré hipotecario por la suma principal de $495,000.00 ("Pagaré Hipotecario") a favor de EMI (predecesor en interés de Doral Bank), o a su orden, con intereses al 7½ % anual y vencedero el 1 de abril de 2020, juramentado mediante el afidávit número 2,165 del Notario Público David Cardona Dingui ("Pagaré Hipotecario").

2. En la misma fecha, los Deudores constituyeron hipoteca en garantía del Pagaré Hipotecario mediante la escritura de Hipoteca número 121 (la "Hipoteca") otorgada en San Juan, Puerto Rico, el 17 de marzo de 2005, ante el Notario Público David Cardona Dingui, la cual consta inscrita al folio 68 del tomo 1,121 de Santurce Norte, finca número 7,137, inscripción 20ma., Registro de la Propiedad de Puerto Rico, Sección I de San Juan.

3. La Hipoteca grava la siguiente propiedad:
**URBANA**: Barrio Sección Norte de Santurce Norte. Solar: Cabida: 296.69 Metros Cuadrados. Parcela de terreno en la sección norte del Barrio de Santurce de esta Ciudad de San Juan, Puerto Rico, compuesta de doscientos noventa y seis metros con sesenta y nueve centímetros cuadrados (296.69 m.c.), más o menos. En lindes, por el SUR, en veintitrés metros ochenta y tres centímetros con Juan Hernández López y Dolores Moreno; al NORTE, en veintiún metros cinco centímetros con Juan Hernández López; al ESTE, en dieciséis metros con Pedro Pérez, hoy Martín Ortega y al OESTE, en once metros con la Calle Del Parque.

Enclava una casa de concreto de dos plantas de concreto armado de siete metros de frente por diez metros de fondo, con mirador, garaje y cuarto de servicio.

Inscrita al folio 218 del tomo 170 de Santurce Norte, finca número 7,137, Registro de la Propiedad, Sección I de San Juan.

4. Por causa onerosa, BPPR advino dueña y acreedora del Pagaré Hipotecario y le transfirió todos los derechos, títulos e intereses sobre el Pagaré Hipotecario a Condado 3, quien a su vez le transfirió todos los derechos, títulos e intereses sobre el Pagaré Hipotecario a Luna Commercial II.

5. Luna, a su vez, le transfirió todos los derechos, títulos e intereses sobre el Pagaré Hipotecario a Estrella, quien, a su vez, le transfirió todos los derechos, títulos e intereses sobre el Pagaré Hipotecario a B2B.

6. B2B actualmente es sucesor en interés del derecho del préstamo o la acreencia evidenciada bajo el Pagaré Hipotecario, la cual al presente no ha sido negociada, cedida, endosada o de otro modo transferida, por lo que sigue siendo el único dueño del interés y derechos del préstamo o la acreencia evidenciada bajo el Pagaré Hipotecario.

7. El Pagaré Hipotecario se extravió o se destruyó inadvertidamente o la posesión ilegal la ostentan personas desconocidas denominadas Fulano De Tal y Mengano Del Cual por desconocerse su identidad.

8. La deuda evidenciada por el Pagaré Hipotecario no ha sido saldada ni pagada por los Deudores, ni por personas actuando en su representación o beneficio, ni tampoco ha sido cancelada.

A tales efectos, el foro primario determinó que B2B demostró a satisfacción del tribunal ser el acreedor del pagaré hipotecario extraviado. De igual forma, concluyó que la solicitud de los apelantes para llevar a cabo un descubrimiento de prueba resultaba repetitiva a los fines de lo que se pretendía descubrir. Por todo lo cual, declaró Ha Lugar la solicitud de sentencia sumaria con los siguientes pronunciamientos:

1. Se declara a B2B, como único y legítimo acreedor de la obligación evidenciada por el pagaré objeto de esta acción, y se le ordena a B2B y a los deudores Sra. Rodríguez y el Sr. Veras Rodríguez Deudores, y de no estar disponibles los mencionados deudores entonces al Alguacil de este Tribunal, a suscribir un pagaré a favor de B2B en sustitución del original, ante el Notario a ser designado por la Demandante, bajo los mismos términos, condiciones, cláusulas y texto del original, cuya descripción literal surge de la escritura de hipoteca y/o de la copia del pagaré hipotecario que se acompañaron con la Demanda Enmendada, quedando dicho gravamen hipotecario en toda su fuerza y vigor únicamente con relación al referido pagaré sustituto;

2. Se declara la ineficacia e inexistencia del pagaré hipotecario suscrito por los deudores, Sra. Rodríguez y el Sr. Veras Rodríguez, el 17 de marzo de 2005 ante el Notario Público David Cardona Dingui mediante el afidávit número 2,165, a favor de EMI, o a su orden, por la suma principal de $495,000.00 con intereses al 7½ % anual, y vencedero el 1 de abril de 2020.

3. El 17 de marzo de 2005, los deudores, Sra. Rodríguez y el Sr. Veras Rodríguez constituyeron hipoteca en garantía del Pagaré Hipotecario mediante la escritura de Hipoteca número 121 otorgada en San Juan, Puerto Rico, ante el Notario Público David Cardona Dingui, la cual consta inscrita al folio 68 del tomo 1,121 de Santurce Norte, finca número 7,137, inscripción 20ma., Registro de la Propiedad de Puerto Rico, Sección I de San Juan.

4. En ausencia de los deudores, Sra. Rodríguez y el Sr. Veras Rodríguez o en la eventualidad en que éstos se nieguen a cumplir con esta Sentencia, se Ordena a la Secretaria a expedir Mandamiento dirigido al Alguacil del Tribunal para que suscriba el pagaré hipotecario en sustitución del original ante Notario Público a ser designado por la Demandante, bajo los mismos términos, condiciones, cláusulas y texto del original, cuya descripción literal surge de la escritura de hipoteca descrita anteriormente la cual se acompañó como anejo de la Demanda Enmendada;

5. Conforme a la Regla 92.4 del Reglamento General Para la Ejecución de la Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico – Ley Núm. 210-2015 ordene el otorgamiento del instrumento notarial sustituto, entiéndase una escritura de sustitución de pagaré, con el notario público que escoja el Demandante;

6. El Demandante puede solicitar a este Tribunal cualquier otra orden y/o remedio al cual tenga derecho que resulte propio y correcto para lograr el propósito de esta Sentencia.

En desacuerdo, el 23 de octubre de 2025, la señora Rodríguez Martínez y el señor Veras Rodríguez presentaron este recurso, en el que plantearon que el TPI cometió los siguientes errores:

PRIMER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL INCUMPLIR CON SU DEBER DE ATENDER, CON PREFERENCIA Y PRIORIDAD, EL PLANTEAMIENTO DE FALTA DE JURISDICCIÓN OPORTUNAMENTE PRESENTADO POR LOS APELANTES. ASIMISMO, ERRÓ AL NO DECRETAR LA DESESTIMACIÓN DE LA DEMANDA COMO CONSECUENCIA NECESARIA DE DICHA AUSENCIA DE JURISDICCIÓN.

SEGUNDO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR *HA LUGAR* LA MOCIÓN DE SENTENCIA SUMARIA PRESENTADA POR B2B, A PESAR DE LA EXISTENCIA DE HECHOS MATERIALES EN CONTROVERSIA QUE HACÍAN IMPROCEDENTE LA ADJUDICACIÓN DEL PLEITO POR ESTA VÍA, PARTICULARMENTE EN LA ETAPA PROCESAL EN QUE SE ENCONTRABA EL CASO.

TERCER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO REQUERIR LA RENUNCIA DEL ABOGADO DE EMI EQUITY, QUIEN FUNGIÓ COMO NOTARIO AUTORIZANTE DEL PAGARÉ OBJETO DE LA CONTROVERSIA. ASIMISMO, ERRÓ AL NO ORDENAR EL DESGLOSE SOLICITADO DE ALEGACIONES RESPONSIVAS PRESENTADAS NI DISPONER LA ANOTACIÓN DE REBELDÍA QUE CORRESPONDÍA EN DERECHO.

CUARTO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL INCURRIR EN UN USO ABUSIVO Y ARBITRARIO DE SU DISCRECIÓN AL *DECLARAR NO HA LUGAR* LA MOCIÓN DE DESCALIFICACIÓN PRESENTADA CONTRA LA REPRESENTACIÓN LEGAL ACTUAL DE LA APELADA, INTEGRADA POR EL BUFETE FERRAIUOLI Y EL LCDO. PARRILLA.

En esencia, los apelantes señalaron que el TPI incidió al no atender con preferencia el planteamiento sobre falta de jurisdicción presentado por ellos previo a atender cualquier otro asunto interlocutorio. En este sentido, sostuvieron que, debido al principio de especialidad, Condado 3 tenía que haber sido emplazado conforme al Artículo 13.13 (A) de la Ley Núm. 164-2009, *supra*, y no mediante edictos como ocurrió en la presente controversia. Por lo cual, arguyeron que el foro primario nunca adquirió jurisdicción sobre dicha entidad y, en consecuencia, procedía revocar el dictamen y ordenar la desestimación del caso.

En cuanto la moción de sentencia sumaria, indicaron que la misma no procedía debido a que existían hechos materiales controvertidos que impedían un dictamen sumario. En particular, puntualizaron que el foro *a quo* descansó en las alegaciones del apelado, así como documentos insuficientes e inadmisibles para establecer quienes eran los acreedores previos y/o posibles tenedores del instrumento negociable. Por lo cual, razonaron que existía controversia sobre lo antedicho y, en efecto, se requería un descubrimiento de prueba para establecer el tracto del pagaré.

Respecto las solicitudes de descalificación, esbozaron que el TPI erró en no requerirle la renuncia al abogado de EMI, Lcdo. David Cardona Dingui (licenciado Cardona Dingui) y de no ordenar el desglose de la alegación responsiva de dicha entidad ni su anotación en rebeldía. Argumentaron que, dicha comparecencia no era permitida por virtud de la Ley Notarial, ya que fue la representación legal de EMI quien autorizó el pagaré de interés en el presente caso. De igual forma, manifestaron que no se trató de un error clerical sino de una comparecencia formal con todas las consecuencias legales y éticas que ello acarrea. Además, alegaron que el TPI incurrió en error manifiesto cuando permitió la sustitución de la representación legal según lo solicitó otro abogado en vez de requerirle al licenciado Cardona Dingui que presentara una moción de relevo de representación.

Por otro lado, plantearon que el foro primario incurrió en abuso de discreción al no descalificar a la representación actual del apelado, integrada por el Bufete Ferraiuoli y el Lcdo. Luis Parrilla Hernández (licenciado Parrilla Hernández). Adujeron que, la relación de la representación legal con los codemandados y, en particular, con Condado 3, generaba una apariencia altamente impropia. A esto, añadieron que dicha relación creaba una presunción fundada de

posible obtención de información confidencial o privilegiada lo cual causaba un perjuicio indebido.

Por su parte, el 19 de noviembre de 2025, el apelado presentó su alegato donde arguyó que, contrario a lo alegado por los apelantes, el TPI atendió con preferencia la controversia jurisdiccional. Esbozó que, el foro primario no desatendió el asunto jurisdiccional presentado ante su consideración para dilucidar otras mociones, sino que ya había emitido un dictamen sobre un asunto presentado previamente que aún no se había notificado.

En este sentido, esgrimió que Condado 3 fue emplazado conforme a derecho. Sostuvo que, el Tribunal Supremo en *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994 (2021), reafirmó la utilización del emplazamiento mediante edicto para emplazar a una corporación extranjera, que no estaba autorizada ni registrada para hacer negocios en el Estado Libre Asociado de Puerto Rico y que no contaba con un agente residente. De igual forma, manifestó que aun si se determinara que Condado 3 fue emplazado incorrectamente, no procedería la desestimación de la reclamación ya que no era una parte indispensable.

Respecto a la moción de sentencia sumaria, indicó que los documentos presentados establecían el tracto de cesión del pagaré extraviado. Señaló que de la *Resolución* emitida el 11 de enero de 2023, en el caso KCD2009-1460, se desprendía que los apelantes reconocieron al BPPR y Condado 3 como acreedores previos a Luna a quien fue concedida la sustitución por el tribunal en dicho caso. Igualmente, adujo que del *Bill of Sale* se manifestaba que Estrella fue sucesora en interés del BPPR, Condado 3 y Luna por lo cual no se trataba de meras alegaciones del apelado. Por consiguiente, esgrimió que mediante el *Purchase and Sale Agreement* suscrito entre Estrella y B2B este último adquirió el interés del derecho del préstamo.

En cuanto a las solicitudes descalificación, alegó que, en lo que concernía al licenciad Cardona Dingui, que este no estaba impedido de actuar como abogado dado que en el presente caso se exigía la reproducción del pagaré y no las contraprestaciones de las que se obligaron los apelantes. Además, esbozó que el referido abogado ya había sido sustituido por el Lcdo. Jaime Dávila Santini (licenciado Dávila Santini) por lo que no continuaba como representación legal de EMI.

Sobre la representación legal de B2B, manifestó que nuestro ordenamiento solo prohibía la representación simultánea o sucesiva de dos clientes cuando los intereses de ambos sean adversos. Dicho esto, sostuvo que los apelantes no podían precisar cuál era el supuesto conflicto de intereses presente en caso de *autos* por no ser la parte con legitimación activa para ello.

## II.

### A. Sentencia sumaria

La sentencia sumaria es un mecanismo procesal que permite disponer un caso ágilmente, sin la celebración de un juicio, siempre que no se presenten controversias genuinas de hechos materiales que requieran ser dilucidadas en un juicio plenario. *Coop. Seguros Múltiples de PR v. ELA,* 2025 TSPR 78, 216 DPR ___ (2025); *Birriel Colón v. Econo y otro,* 213 DPR 80, 90 (2023); *SLG Fernández-Bernal v. RAD-MAN et al.,* 208 DPR 310, 334 (2021). Un hecho material es aquel esencial y pertinente que pueda afectar el resultado de la reclamación según el derecho sustantivo. *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010). Así, procede dictar sentencia sumaria cuando las alegaciones, deposiciones, contestaciones a interrogatorios, admisiones, declaraciones juradas, junto a cualquier otra evidencia, demuestran que no existe controversia real sustancial sobre los hechos esenciales. Regla 36.3(e) de Procedimiento Civil, *supra,* R. 36.3 (e); *Meléndez González et al. v. M. Cuebas,* 193 DPR

100, 109 (2015); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).

La parte que se opone a la solicitud de sentencia sumaria debe refutar los hechos materiales que entienda están en disputa mediante evidencia sustancial. *Birriel Colón v. Supermercado Los Colobos, supra; SLG Fernández-Bernal v. RAD-MAN* et al., *supra*, págs. 336-337. Cuando la petición de sentencia sumaria está respaldada con declaraciones juradas u otra prueba, el oponente no puede descansar en meras alegaciones, sino que debe responder con igual grado de especificidad y detalle. Regla 36.3 (c) de Procedimiento Civil, *supra*, R. 36.3 (c); *Birriel Colón v. Econo y otro, supra; Ramos Pérez v. Univisión, supra,* pág. 215. Empero, la falta de prueba para refutar la evidencia del promovente no implica la concesión automática de la sentencia sumaria. *Birriel Colón v. Supermercado Los Colobos, supra; SLG Fernández-Bernal v. RAD-MAN* et al., *supra*, pág. 337.

El Tribunal Supremo estableció el estándar para este Foro apelativo revisar una sentencia sumaria. *Meléndez González et al. v. M. Cuebas, supra.* Primero, este Tribunal se encuentra en la misma posición que el Foro Primario al revisar *de novo* una solicitud de sentencia sumaria, conforme con la Regla 36 de Procedimiento Civil, *supra*, R. 36. En tal ejercicio, solamente se puede considerar evidencia presentada al Foro *a quo,* y se debe examinar el expediente de la forma más favorable a la parte opositora. *Íd.*, pág. 116.

Segundo, corresponde verificar que tanto la petición de sentencia sumaria como su oposición cumplan con los requisitos codificados por la Regla 36 de Procedimiento Civil, *supra*, R. 36 y discutidos en el caso *SLG Zapata- Rivera v. J.F. Montalvo, supra. Íd.*, pág. 119. Tercero, debe determinarse si en realidad existen hechos materiales en controversia. De ser así, es necesario distinguir entre los hechos controvertidos e incontrovertidos, según dispone la Regla 36.4 de Procedimiento Civil, *supra,* R. 36.4. *Íd.* Cuarto, si no existen

hechos materiales en controversia, procede evaluar si el TPI aplicó correctamente el derecho. *Íd.*

## B. *Emplazamiento*

El emplazamiento es un mecanismo procesal cuyo propósito es notificar a la parte demandada sobre la existencia de una reclamación en su contra para que formule sus alegaciones y quede obligado por el dictamen que finalmente emita el tribunal. *Ross Valedón v. Hosp. Dr. Susoni et al.*, 213 DPR 481, 487-488 (2024); *Natal Albelo v. Romero Lugo y otros*, 206 DPR 465, 477 (2021); *Pérez Quiles v. Santiago Cintrón*, 206 DPR 379 (2021); *Banco Popular v. SLG Negrón*, 164 DPR 855, 863 (2005); *Rivera v. Jaume*, 157 DPR 562 (2002); R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6ta ed., San Juan, Lexis Nexis, 2017, pág. 256. A su vez, el Tribunal adquiere jurisdicción sobre la persona de la parte demandada. *SLG Rivera-Pérez v. SLG Díaz-Doe et al.*, 207 DPR 636, 647 (2021).

En tal sentido, el emplazamiento es una exigencia del debido proceso de ley. *Banco Popular v. SLG Negrón, supra*; *First Bank of PR v. Inmob. Nac., Inc.*, 144 DPR 901, 913 (1998). Pues, "[e]l emplazamiento constituye, así, el paso inaugural del mandato constitucional que cobija a toda persona demandada, viabilizando además el ejercicio de jurisdicción judicial". *SLG Rivera-Pérez v. SLG Díaz-Doe et al., supra*. De esta forma, se requiere cumplimiento estricto de la parte demandante con las reglas sobre emplazamientos. R. Hernández Colón, *op. cit.*, pág. 258. Por ello, la falta de un correcto emplazamiento a la parte contra la que se dicta sentencia produce la nulidad de la sentencia dictada por falta de jurisdicción sobre el demandado. *Torres Zayas v. Montano Gómez et als.*, 199 DPR 458, 468-469 (2017).

El emplazamiento será diligenciado en el término de ciento veinte (120) días a partir de la presentación de la demanda o de la

expedición del emplazamiento por edicto. Regla 4.3 (c) de Procedimiento Civil, *supra*, R. 4.3 (c). Transcurrido dicho término sin que se haya efectuado el diligenciamiento del emplazamiento, el Tribunal debe decretar la desestimación y el archivo sin perjuicio. *Íd.* Una subsiguiente desestimación y archivo por incumplimiento con el término, tendrá el efecto de una adjudicación en los méritos. *Íd.*

En lo que nos concierne, la Regla 4.6 (a) de Procedimiento Civil, *supra*, R. 4.6 (a) dispone que:

> Cuando la persona a ser emplazada esté fuera de Puerto Rico, o que estando en Puerto Rico no pudo ser localizada después de realizadas las diligencias pertinentes, o se oculte para no ser emplazada, o si es una corporación extranjera sin agente residente, y así se compruebe a satisfacción del tribunal mediante declaración jurada que exprese dichas diligencias, y aparezca también de dicha declaración, o de la demanda presentada, que existe una reclamación que justifica la concesión de algún remedio contra la persona que ha de ser emplazada, o que dicha persona es parte apropiada en el pleito, el tribunal podrá dictar una orden para disponer que el emplazamiento se haga por un edicto. [...].

Por otra parte, el Artículo 13.11 (C) de la Ley Núm. 164-2009, *supra*, establece que:

> En caso de que no se pueda emplazar a la corporación foránea con arreglo a lo dispuesto bajo el inciso (A) de este Artículo, se podrá emplazar a la corporación por medio del Secretario de Estado y dicho emplazamiento será considerado, para todos los efectos, como efectuado con arreglo a lo dispuesto bajo el inciso (A) de este Artículo. [...]. 14 LPRA sec. 3811.

### C. Instrumento Negociable

La Ley Núm. 208 de 17 de agosto de 1995 (Ley Núm. 208-1995), según enmendada, conocida como la *Ley de Transacciones Comerciales,*19 LPRA sec. 401 *et seq.*, es una legislación especial destinada a regular los instrumentos negociables, así como su negociabilidad, cesión y exigibilidad. Esta ley define el término instrumento negociable como "una promesa o una orden incondicional de pago de una cantidad específica de dinero, [...], si el mismo: [entre otros] (1) es pagadero al portador o a la orden al momento de su emisión o cuando primero adviene a la posesión de un tenedor". Ley Núm. 208-1995, Sec. 2-104(a)(1), 19 LPRA sec. 504.

Siguiendo la misma línea, la Ley Núm. 208-1995, plantea que una promesa u orden es pagadera al portador si la misma:

(1) especifica que es pagadera al portador o a la orden del portador o de otra forma indica que la persona en posesión de la promesa u orden tiene derecho al pago;
(2) no designa un tomador;
(3) especifica que es pagadera a, o a la orden de, efectivo ("cash") o de otra forma indica que no es pagadera a una persona identificada.
*Id.*, Sec. 2-109 (a)(1-3), 19 LPRA sec. 509.

De igual forma, la legislación establece que una promesa que no es pagadera al portador es pagadera a la orden si:

[E]s pagadera (i) a la orden de una persona identificada, o (ii) a una persona identificada o a su orden. Una promesa u orden que es pagadera a la orden es pagadera a la persona identificada.
*Id.,* inciso (b), 19 LPRA sec. 509.

Además, se define como portador a la persona que está en posesión de un instrumento, documento de título, o valor con certificado pagadero al portador o endosado en blanco. *Id.,* Sec. 1-201 (5), 19 LPRA sec. 451. Entonces, un instrumento que es pagadero al portador puede convertirse en pagadero a una persona identificada si el mismo recibe un endoso especial. *Id.*, Sec. 2-109 (c), 19 LPRA sec. 509. Del mismo modo, un instrumento que es pagadero a una persona identificada puede convertirse en pagadero al portador si es endosado en blanco. *Id.*

Ahora bien, cuando una hipoteca se constituye para garantizar un instrumento negociable por endoso o al portador, el derecho hipotecario se entenderá transferido con el instrumento sin la necesidad de tener que informar al deudor o hacerse constar en el Registro la transferencia. Art. 91 de la Ley Núm. 210 de 8 de diciembre de 2015 (Ley Núm. 210-2015), según enmendada, conocida como la *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico,* 20 LPRA sec. 6118. No obstante, referida Ley dispone que cuando un instrumento negociable garantizado con una hipoteca fuese extraviado solo podrán cancelarse dichas inscripciones mediante la presentación de

una sentencia final y firme en la cual se declaren extinguidas las obligaciones. 30 LPRA sec. 6172.

En este sentido, la Regla 92.4 del Reglamento Núm. 8814 del 31 de agosto de 2016 (Reglamento Núm. 8814), según enmendado, conocido como el *Reglamento General para la Ejecución de la Ley del Registro de Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico*, dispone que:

> En caso de extravío o destrucción del instrumento negociable sin que se hayan extinguido las obligaciones representadas, se llevará el procedimiento según lo dispuesto en la Regla 122.1 de este Reglamento. Probados los hechos alegados, la sentencia o resolución que emita el Tribunal dispondrá para el otorgamiento del instrumento negociable sustituto. Bajo ninguna circunstancia se aceptará una copia del instrumento negociable extraviado como instrumento sustituto.

A tales efectos, la Regla 122.1 de mencionado Reglamento estipula que:

> Cuando se haya extraviado el instrumento negociable garantizado con hipoteca o alguno de ellos, de ser varios, se instará acción judicial contra el último poseedor conocido de los instrumentos extraviados, y cualquier poseedor desconocido. Cuando el último acreedor conocido es una persona distinta a la que surge del Registro, también se deberá demandar y emplazar a éste. El Tribunal ordenará la publicación de edictos con arreglo a las normas de procedimiento civil vigentes. [...].

### D. Descalificación del Abogado

La descalificación de un abogado es una medida preventiva como parte del poder inherente que posee el tribunal para supervisar la conducta de los abogados que postulan ante sí. *ORIL v. El Farmer, Inc.*, 204 DPR 229, 241 (2020); *K-Mart Corp. v. Walgreens*, 121 DPR 633 (1988); *Job Connection Center v. Sups. Econo*, 185 DPR 585; R. Hernández Colón, *op. cit.*, pág. 82.

La descalificación de los abogados es una decisión discrecional del tribunal que responde al manejo eficiente del caso. *Íd.* En tal sentido, el efectivo funcionamiento de nuestro sistema judicial y la rápida disposición de los asuntos litigiosos, requieren que los juzgadores de instancia gocen de gran flexibilidad y discreción para conducir los procedimientos conforme a su buen juicio. *In re Collazo*

*I*, 159 DPR 141, 150 (2003); Por ello, cuentan con múltiples mecanismos procesales para garantizar el curso adecuado de los procedimientos sin intervención apelativa. *Íd.*

Sin embargo, cuando es la parte quien solicita la descalificación de un representante legal, la mera presentación de la moción no implica la concesión automática de lo peticionado. *Job Connection Center v. Sups. Econo, supra*, pág. 597. El tribunal deberá hacer un análisis de la totalidad de las circunstancias tomando en consideración los siguientes factores:

> (i) si quien solicita la descalificación tiene legitimación activa para invocarla; (ii) la gravedad de la posible violación ética involucrada; (iii) la complejidad del derecho o los hechos pertinentes a la controversia y el *expertise* de los abogados implicados; (iv) la etapa de los procedimientos en que surja la controversia sobre descalificación y su posible efecto en cuanto a la solución justa, rápida y económica del caso, y (v) el propósito detrás de la descalificación, es decir, si la moción se está utilizando como mecanismo para dilatar los procedimientos. *Íd.*, págs. 597-598.

El foro *a quo* también tendrá que analizar el perjuicio o la desventaja indebida que le causa la continua representación del abogado de la cual la parte adversa solicita la descalificación. *ORIL v. El Farmer, Inc.*, *supra*, pág. 243. Además, deberá sopesar el derecho que le asiste todo ciudadano de escoger su representación legal. *Íd.*

### E. La Fe Pública Notarial

El Artículo 2 de la *Ley Notarial*, Ley Núm. 75 de 2 de julio de 1987, 4 LPRA sec. 2002, según enmendada, consagra el principio de la fe pública notarial de la siguiente manera:

> El notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes, de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle autoridad a los mismos. La fe pública del notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento.

Esta disposición reafirma que el notario no actúa como un simple legalizador de firmas de forma automática, sino que debe velar

porque todo instrumento público cumpla con los requisitos legales, sea verdadero, y refleje una transacción legítima y válida. *In re Sánchez Reyes,* 204 DPR 548, 566 (2020). Además, como depositario de la fe pública, el notario tiene el deber ineludible de propiciar y garantizar un estado de conciencia informada en los otorgantes. *In re Pérez,* 104 DPR 770, 776 (1976).

Respecto al ejercicio de funciones notariales, se ha resuelto que "los notarios no pueden entrar en conflicto de intereses con las personas que acuden ante [ellos] a otorgar un instrumento público, pues el notario no tiene propiamente clientes, ya que representa la fe pública notarial". Steidel Figueroa, S., *Ética del Abogado y Responsabilidad Disciplinaria,* San Juan, 2016, pág. 172.

Atañe a la discusión la Regla 5 del Reglamento Notarial, 4 Ap. XXIV R. 5.  Esta dispone:

> La práctica de la profesión de la abogacía puede ser en algunas ocasiones incompatible con la práctica de la notaría.
>
> El notario autorizante de un documento público está impedido de actuar posteriormente como abogado de una de las partes otorgantes para exigir en un litigio contencioso las contraprestaciones a que se haya obligado cualquier otra parte en el documento otorgado ante él.
> [...].

### III.

En el presente caso, los apelantes arguyeron que el TPI incidió en no atender el asunto jurisdiccional con preferencia y por no desestimar la reclamación por falta de parte indispensable. De igual forma, sostuvieron que el foro *a quo* erró en resolver el pleito sumariamente toda vez que existían hechos medulares en controversia. A su vez, esbozaron que el TPI incidió en no descalificar la representación legal de EMI y de la parte apelada por violaciones a la Ley de Notarial, *supra,* y por una representación simultanea y sucesiva adversa, respectivamente.

Por ser de carácter preferencial atenderemos en primer lugar el asunto jurisdiccional. Los apelantes argumentaron que el foro

primario nunca adquirió jurisdicción sobre Condado 3, dado que se emplazó la entidad bajo la Regla 4.6 de Procedimiento Civil, *supra*, R. 4.6, cuando debió haber sido conforme al Art. 13.11 de la Ley Núm. 164-2009, *supra*, por el principio de especialidad. Por lo cual, sostuvieron que procedía desestimar el recurso por falta de parte indispensable. No les asiste la razón.

Recordamos que a grandes rasgos el propósito del emplazamiento es notificar a la parte demandada sobre la existencia de una reclamación en su contra y que quede obligado por el dictamen que en su día se emita. *Ross Valedón v. Hosp. Dr. Susoni et al.*, *supra*, págs. 487-488; *Natal Albelo v. Romero Lugo y otros*, *supra*, pág. 477; *Pérez Quiles v. Santiago Cintrón*, *supra*; *Banco Popular v. SLG Negrón*, *supra*, pág. 863; *Rivera v. Jaume*, *supra*; R. Hernández Colón, *Op. Cit.*, pág. 256. A tales efectos, la Regla 4.6 de Procedimiento Civil, *supra*, R. 4.6 (a), establece que:

> Cuando la persona a ser emplazada esté fuera de Puerto Rico, o que estando en Puerto Rico no pudo ser localizada después de realizadas las diligencias pertinentes, o se oculte para no ser emplazada, o si es una corporación extranjera sin agente residente, y así se compruebe a satisfacción del tribunal mediante declaración jurada que exprese dichas diligencias, y aparezca también de dicha declaración, o de la demanda presentada, que existe una reclamación que justifica la concesión de algún remedio contra la persona que ha de ser emplazada, o que dicha persona es parte apropiada en el pleito, el tribunal podrá dictar una orden para disponer que el emplazamiento se haga por un edicto. […].

De igual forma, el Tribunal Supremo en *Caribbean Orthopedics v. Medshape et al.*, *supra*, pág. 1006 resolvió que:

> En el caso ante nuestra consideración, Caribbean Orthopedics probó que Medshape es una corporación creada u organizada al amparo de las leyes del estado de Georgia, y que no cuenta con un agente residente en nuestra jurisdicción. Por lo tanto, como Medshape es "una corporación extranjera sin agente residente", Regla 4.6(a) de Procedimiento Civil, *supra*, actuó correctamente el foro primario al expedir el emplazamiento por edicto.

En vista de ello, determinamos que Condado 3 fue debidamente emplazado conforme al mecanismo provisto en la Regla 4.6 (a) de Procedimiento Civil, *supra*, R. 4.6 (a) y, en consecuencia, el tribunal adquirió jurisdicción sobre su persona. Además, aun si

juzgáramos que dicho emplazamiento fuese defectuoso esto no conllevaría la desestimación de la demanda. Apuntalamos que, la Regla 122.1 del Reglamento Núm. 8814 dispone que:

> Cuando se haya extraviado el instrumento negociable garantizado con hipoteca o alguno de ellos, de ser varios, se instará acción judicial contra el último poseedor conocido de los instrumentos extraviados, y cualquier poseedor desconocido. Cuando el último acreedor conocido es una persona distinta a la que surge del Registro, también se deberá demandar y emplazar a éste. El Tribunal ordenará la publicación de edictos con arreglo a las normas de procedimiento civil vigentes. [...].

A partir de lo antes dicho, Condado 3 no era el último poseedor conocido del instrumento extraviado ni la persona que surgía en el Registro de la Propiedad, por ende, no era una parte indispensable en la presente controversia.

Respecto las mociones de descalificación, reiteramos que la descalificación de un abogado es una facultad discrecional del tribunal que responde al manejo eficiente del caso. R. Hernández Colón, *op. cit.*, pág. 82 Dicho esto, cuando es la parte adversa quien solicita la descalificación, el tribunal deberá evaluar los factores enunciados en el acápite II de esta Sentencia y el perjuicio indebido que le causa la continua representación al solicitante. *ORIL v. El Farmer, Inc., supra*, pág. 243; *Job Connection Center v. Sups. Econo, supra*, págs. 597-598. A su vez, también tendrá que sopesar el derecho que le asiste a todo ciudadano de escoger a su representación legal. *ORIL v. El Farmer, Inc., supra*, pág. 243

Los apelantes plantearon que procedía la descalificación del licenciado Cardona Dingui, quien fungía como el abogado de EMI, y el desglose de la alegación responsiva de mencionada entidad debido a que este fue el notario que otorgó el pagaré extraviado por lo que su participación contravenía la Regla 5 del Reglamento Notarial, *supra.*

En lo pertinente, aludida Regla dispone que:

> El notario autorizante de un documento público está impedido de actuar posteriormente como abogado de una de las partes otorgantes para exigir en un litigio contencioso las

contraprestaciones a que se haya obligado cualquier otra parte en el documento otorgado ante él

Sin embargo, en el caso de *autos* no se está exigiendo la contraprestación a la que se obligó uno de los otorgantes en el documento público, sino un sustituto por el instrumento extraviado. Por lo que, juzgamos que las prohibiciones de aludida Regla no son aplicables. A esto, añadimos que del expediente surge que el licenciado Cardona Dingui ya fue sustituido por el licenciado Dávila Santini en el pleito de epígrafe.

Por otra parte, los apelantes también solicitaron la descalificación de la representación legal del apelado. Sostuvieron que, dicha representación era una simultanea y(o) sucesiva de clientes con intereses adversos. A su vez, argumentaron que la misma generaba una apariencia altamente impropia y que le causaba un perjuicio indebido dado a la obtención de información confidencial o privilegiada.

A pesar de lo expuesto, los apelantes no establecieron en qué consistía el alegado perjuicio indebido. Adicionalmente, tampoco enunciaron en qué consistía el alegado conflicto de interés que surgía a raíz de la representación legal de B2B. Recordamos que, nuestro ordenamiento no prohíbe la representación simultanea o sucesiva de clientes cuando esto no causa un potencial conflicto de intereses. Ante ello, resolvemos que los planteamientos presentados por los apelantes son meras generalidades que no ponen a este foro revisor en posición para concluir que procedía la descalificación de la representación legal del apelado.

En vista de ello, colegimos que no procedían las mociones de descalificación presentadas por los apelantes. Atendido lo anterior, procederemos a evaluar los méritos de la sentencia sumaria.

De entrada, destacamos que, como cuestión de umbral, nos corresponde efectuar una revisión *de novo* de la sentencia sumaria,

conforme lo exige la jurisprudencia sobre la Regla 36 de Procedimiento Civil, *supra*, R. 36. En tal ejercicio revisor, solo podemos tomar en consideración la evidencia presentada al foro primario y examinarla de la manera más favorable a la parte opositora. Cónsono con ello, debemos corroborar si la moción de sentencia sumaria y su respectiva oposición cumple con los criterios esbozados en la Regla 36 de Procedimiento Civil, *supra*, R. 36. Además, verificar si existen hechos materiales controvertidos que impidan la resolución de la reclamación por la vía sumaria.

Tras realizar un minucioso examen de la solicitud de sentencia sumaria, su oposición, así como los documentos en las que se fundamentaron, no apreciamos que existan hechos materiales controvertidos. Por lo que, procedemos a evaluar si el foro primario adjudicó el derecho conforme a la normativa vigente.

Del expediente apelativo se evidencia que los apelantes y EMI suscribieron un pagaré por la suma de $495,000.00,[23] el cual se encuentra garantizado por un inmueble localizado en el Municipio de San Juan.[24] Así las cosas, de la *Resolución* emitida el 11 de enero de 2023, en el caso KCD2009-1460, surge que BPPR, Condado 3 y Luna adquirieron y cedieron su interés del mencionado pagaré en dicho orden sucesivamente.[25] Por consiguiente, Luna transfirió su derecho a Estrella,[26] quien subsecuentemente lo traspasó a B2B.[27]

A tales efectos, el apelado estableció el tracto de cesión del pagaré extraviado y emplazó tanto al acreedor que surge en el Registro de la Propiedad, así como el último poseedor conocido conforme a la Regla 122.1 del Reglamento Núm. 8814. Dicho esto, ninguna de las partes emplazadas compareció en el pleito alegando ser el tenedor actual del instrumento o conocer el paradero del

---

[23] Ver nota al calce Núm. 7, anejo 1.
[24] *Íd.*, anejo 2.
[25] *Íd.*, anejo 4.
[26] *Íd.*, anejo 8.
[27] *Íd.*, anejo 9.

mismo. Por lo cual, habiéndose evidenciado que B2B era el último acreedor del pagare hipotecario y que la deuda cual garantizaba no estaba salda, el TPI no incidió en ordenar la reproducción del pagaré extraviado.

En virtud de todo lo anterior, colegimos que los errores señalados no fueron cometidos y procedemos a confirmar la sentencia impugnada en su totalidad.

**IV.**

Por los fundamentos que anteceden, se confirma la *Sentencia Sumaria* apelada.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones